(49 App. Div. 11.)

### RAMSEY v. NATIONAL CONTRACTING CO.

(Supreme Court, Appellate Division, Second Department. March 13, 1900.)

1. NEGLIGENCE—PILING RAILS IN STREET.
   Defendant caused iron rails to be piled on the roadway of a street without first laying planking on the portion of the roadway used, as required by defendant's permit from the municipal authorities. The top rail lay slantwise to the other, and slightly tilted by a stone under one end. Plaintiff, a boy of 10, sat down on the top rail, when it slipped with him from the pile, crushing his leg. *Held*, that the evidence justified the jury in finding that the accident was caused by the original insecure piling.

2. SAME—CARE REQUIRED.
   Where defendant caused iron rails to be piled in a street in such manner that a boy who sat on them was injured by a rail slipping with him from the pile, defendant was liable, since it was bound to exercise such care as to render the obstruction reasonably safe in view of the fact that pedestrians would probably step on it, and children play about and sit on it.

3. NEGLIGENCE OF SUBCONTRACTOR—LIABILITY OF CONTRACTOR.
   Where a subcontractor piled rails in a street in such manner that an injury resulted to a child who sat down on the pile, the contractor was liable for the injury, since it was his duty to exercise such care as to make the obstruction safe.

4. INSTRUCTIONS—INSTRUCTION CONFLICTING WITH ANOTHER.
   Where, in an action for injuries, the court charged, at defendant's request, that plaintiff could not be awarded damages that would, by way of interest, earn an equivalent to plaintiff's annual losses, it was not error to refuse to charge that in awarding any sum the jury should consider the interest it would produce annually, since the jury might have regarded the second instruction as conflicting with the first.

5. INSTRUCTIONS—DAMAGES—CAPITALIZING ANNUAL LOSSES.
   In an action for injuries it was not error to refuse to charge that in awarding damages the jury should consider the interest the sum awarded would earn annually, since, in the absence of proof, the jury could not be required to speculate on the earning capacity of money.

6. SAME—EXCESSIVE DAMAGES.
   Where defendant caused iron rails to be piled in a street in such manner that a child who sat on the pile received an injury which necessitated amputation of his leg, a verdict for $10,000 was not excessive.

Appeal from trial term, New York county.

Action by Patrick Ramsey, an infant, by Adolph Dumoulin, his guardian ad litem, against the National Contracting Company. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

John A. Dutton, for appellant.
Gilbert D. Lamb, for respondent.

HIRSCHBERG, J.  The action is for damages resulting from alleged negligence.  The defendant was engaged at the time of the accident in constructing an underground trolley road through Sixth avenue in the borough of Manhattan, New York City, having a contract for that purpose with the Metropolitan Street-Railway Company.  It was also in possession of a permit from the municipal authorities conferring the privilege of placing materials upon the avenue and intersecting streets, subject, among other provisions, to the conditions that the street should be covered with planking before such material should be placed thereon, and that no material or other incumbrances should be placed upon the highway outside the limits of said planking.  About two weeks before the accident certain iron rails were delivered to the defendant in West Twenty-Sixth street, near Sixth avenue, for its use in fulfilling the contract, and were piled upon that street without planking.  The delivery was made by the truckman then under contract with the defendant to haul rails for the section of work included in the locality referred to.  This pile of rails remained in the street until the 3d day of August, 1898, when the defendant's servants commenced loading them upon a two-wheeled truck for the purpose of removing them to some place where they were to be used in the work of construction.  At the time of the accident the pile of rails was between two and three feet in height and about a foot in width, and was apparently in the same condition as when originally piled up, excepting that some of the rails had shortly before been loaded on the two-wheeled truck.  The plaintiff, a boy 10 years of age, and then residing in West Twenty-Sixth street, was attracted by this pile of rails and the process of removal.  He went over to them, and sat down upon the top rail, intently watching the operation.  This was between 3 and 4 o'clock in the afternoon, and while the workmen were placing one of the rails upon the truck.  The rail upon which the plaintiff was sitting was to have been next removed, but before the workmen came to it, and after the boy had sat upon it a minute or two, it slipped, with him, from the pile, crushing his left leg so severely as to require amputation. While the plaintiff was sitting upon the rails, a man whose identity is unknown crossed the street, stepping upon the rail on which the plaintiff was sitting, but the witnesses agree that this act had no perceptible effect upon the rail.  Just before the rail slipped, one of the workmen called to the boy to get off; but the warning, if intended as a warning, was not heard by him, nor was it in time to have enabled him to avoid the accident.  The rails were about 25 feet long, and very heavy, requiring several men to handle them. The one which slipped was described by a witness as "lying on top, a little on a slant; didn't lay straight; a little slant to it."  He further described it as being "tilted" by a cobble stone, or a part of a cobble stone, which had been placed under one end of it.  He said "the shape of that cobble stone was kind of roundish; kind of round; take a real round cobble stone, and just as if it was split or cracked in two"; and again, "There was this cobble stone, or what you call a half of a cobble stone, underneath it.  The rail was tilt-

ed; a little slanting; tilted and slanted." The defendant offered no evidence beyond the permit. The case was submitted to the jury in a charge which correctly stated the law of contributory negligence as applicable to a child of the plaintiff's age, and which limited the defendant's duty to the exercise of reasonable care in the original piling of the rails, and which limited liability in this action solely to negligence in that regard.

The evidence was sufficient to justify the jury in finding that the accident was caused by the original insecure piling of the rails. In the first place, they were piled in violation of the requirements of the permit. The provision that planking should be first laid upon the roadway was calculated to secure a flat and uniform surface. These rails, however, were piled upon the roadway as it was, and it cannot be assumed for the defendant's benefit that a surface was thus obtained equally level with that which compliance with the conditions of the permit would have afforded. The rail which caused the accident was not only laid crooked upon the pile, but was caused to slant by the placing of a cobble stone beneath one end of it. There was no prop, guard, or fastening of any kind beyond the weight and inertia of the rail itself, and it was left so insecure that the weight of a small child proved adequate to dislodge it, and to cause it to slip off the pile. That pedestrians would step upon the pile in crossing the street, and children play around it and sit upon it to rest, was quite within the range of probability, and therefore the duty was imposed upon the defendant of exercising such care as would render the obstruction reasonably safe in view of such anticipated uses.

In Earl v. Crouch (Sup.) 10 N. Y. Supp. 882, the court, reversing a nonsuit, said:

"Assuming that the defendant had a right, under the circumstances, to pile the lumber in the street, it was undoubtedly his duty to pile it in such position and in such manner as not unnecessarily to impede the public use of the highway, and still more so as not to endanger the life or limb of those passing therein. He was bound to know that young children were likely to be at play on the street, and it is probably not unreasonable to charge him with the knowledge that a pile of new lumber is a very attractive object to such children, and is likely to become the scene of their exploits and sports. Unquestionably, reasonable care is required of the person erecting such an object on the public street that it shall not be a source of danger to any person using the street in any reasonable or ordinary manner. It was for the jury to say whether precisely what this little boy did was not one of those things that was to have been expected to occur, and against the fatal consequences of which the defendant ought to have used reasonable care to provide. That this lumber could have been piled in such a way as not to have been precipitated by the weight of a child of five years of age is undoubtedly true. Whether, in the exercise of reasonable care, it would have been so piled, seems really to be the only question in this case. The cases of Kunz v. City of Troy, 104 N. Y. 344, 10 N. E. 442, Bransom's Adm'r v. Labrot, 81 Ky. 638, and Lynch v. Nurdin, 41 E. C. L. 422, are all in the line of the reasoning here suggested."

On a subsequent trial a verdict for the plaintiff was affirmed at the general term (16 N. Y. Supp. 770) and in the court of appeals (131 N. Y. 613, 30 N. E. 864).

See, also, Dunn v. Ballantyne, 5 App. Div. 483, 38 N. Y. Supp. 1102; Davis v. Ferris, 29 App. Div. 623, 53 N. Y. Supp. 571; Cosgrove v. Ogden, 49 N. Y. 255.

The defendant cannot find shelter in the act of its truckman on the theory of an independent contract. The duty of exercising the requisite care rested upon the defendant, and, as between it and the traveling public, could only be discharged by performance. Weber v. Railway Co., 20 App. Div. 292, 47 N. Y. Supp. 7; Downey v. Low, 22 App. Div. 460, 48 N. Y. Supp. 207; Dunn v. Ballantyne, supra. Were the rule otherwise, we might still be unwilling to hold that the defendant owed the public no duty of supervision and inspection, or that two weeks did not furnish ample time to charge it with constructive notice of its subcontractor's original carelessness.

The respondent invokes the doctrine of res ipsa loquitur. It finds possible support, under the circumstances of this case, in Clarke v. Railroad Co., 9 App. Div. 51, 41 N. Y. Supp. 78; Stallman v. New York Steam Co., 17 App. Div. 397, 45 N. Y. Supp. 161; Reed v. Mc Cord, 18 App. Div. 381, 46 N. Y. Supp. 407; and Hogan v. Railway Co., 149 N. Y. 23, 43 N. E. 403. But a decision of this question is not necessary in the view of the facts herein taken.

The only alleged error in the charge of the court presented on the argument and in the brief is the refusal to charge, at defendant's request, that in awarding any sum to the plaintiff they must take into consideration the interest which that sum would produce annually. The meaning of the request is not obvious. The court had just charged, at defendant's request, that the jury could not award a sum which would capitalize the plaintiff's yearly losses; which was equivalent to saying that the award must not be regarded as capital producing, by way of interest, a sum of money equal to the plaintiff's annual loss. If at the same time they were told that they must regard the award in the light of capital to be invested, and must consider the rate of interest which it would earn, they might have very naturally regarded the second request as in conflict with the first. The distinction between the two is not pointed out, nor is any suggestion made as to how the interest should be taken into consideration, or for what purpose. The rate of interest which money will earn has steadily diminished in this state, but the defendant can hardly have had that fact in mind with a view to an increased verdict because of possible diminution in the rate of interest in the future. If the request meant that the value of money was to be considered as an interest-producing factor, the plaintiff was no more entitled to the charge than if he had asked a similar instruction with respect to each of the ordinary commodities of life. The value of money, and the uses to which it can be put, are necessarily involved in the rule of compensation which can only be made in money; but, in the absence of proof upon the subject, the jury could not be required to speculate upon either its future earning or purchasing power. The verdict—$10,000—was not excessive.

The judgment and order should be affirmed. All concur.