Keating, J.
Daniel McDonald was killed, while waiting for his car at a Shell Oil Service Station. The station was owned by the Shell Oil Company and leased to Smith Shell Service, operated by one Charles R. Smith. Smith had requested Shell Oil to install a hydraulic lift in one of its two bays. There was an existing lift device in the other service bay. Shell purchased the equipment from the manufacturer, Joyce Cridland Company, and hired a competent independent contractor, William J. Manion, to install the lift.
Smith’s service bay was equipped with an air compressor from which a line furnished air to the old lift. On the morning *165 of the accident, Manion and his helper came to Smith’s station and connected the control valve for the new lift. While this connection was being made, Manion turned off the compressor. When this portion of the work was completed, Manion left the premises for the day at about eleven o’clock in the morning. He had asked Smith not to turn on the compressor or use the old lift while he was actually working on installing the new lift. He fully expected Smith to use the old lift at other times and stated that such use would make no difference to him.
Accordingly, Smith’s employees turned on the compressor to use the old lift. As subsequent laboratory tests revealed, there was a leak in the valve connected to the new lift which allowed the air to go into the new lift, although the valve was in the “ off ” or neutral position. Thus, the new lift rose. The chain holding it in place broke, and a fragment struck the plaintiff’s intestate.
Judgment was recovered against both Smith and Manion in the amount of $116,000.
We conclude that the evidence was insufficient to support the verdict against the defendant Smith. The plaintiff did not rely on res ipso loquitur but attempted to show specific acts of negligence. The record shows that Smith had had nothing to do with the purchase or installation of the equipment. It is likewise clear that Smith did not, in any way, produce the minute leak in the valve which caused the accident.
It has been suggested that the work which was being done by Manion was so inherently dangerous as to warrant the imposition of strict liability upon Smith. This is unsupported by the record. No claim has been made that the installation of the new lift was likely to be “peculiarly dangerous”. (See Prosser, Torts [3d ed.], § 70, p. 484.) From all that appears in the record, it is clear that, but for the minute, unusual leak in the valve, the accident would not have happened.
Manion himself testified that he knew of no reason why the old lift could not be used while he was not actually working on the installation of the new lift. Smith was entitled to rely on Manion in this respect. This was not a case involving a specific danger apparent to anyone, which in fact did occur, as was the case in Rohlfs v. Weil (271 N. Y. 444) cited in the dissent. In this case a lessee permitted the erection of scaffolding outside his *166 premises and above a public sidewalk by an independent contractor employed by a sublessee sign advertiser. The court noted that “No barricades or danger signals were posted on the sidewalk or elsewhere to warn pedestrians of the presence of this scaffold suspended over them.” (Rohlfs v. Weil, supra, p. 447.)
In holding the lessee of the premises liable, despite his delegation of the work to an independent contractor, the court emphasized (p. 448) that “the consequences were apparent if any portion of this scaffold should fall.”
The rule with respect to ‘ inherently dangerous ’ ’ work is an exception to the general rule that an employer is not liable for the torts of his independent contractor (Prosser, Torts [3d ed.], § 70, p. 484). This exception is properly applicable to cases such as Rohlfs v. Weil (supra) where the danger is readily apparent and the accident foreseeable. (See Palsgraf v. Long Is. R. R. Co., 248 N. Y. 339.)
Since the work was not apparently dangerous, Smith was entitled to rely on the judgment of Manion, a competent contractor, who had left no instructions that customers should not be let in, or that the compressor operating the old lift could not be turned on.
Accordingly, we find no basis for supporting the judgment against Smith.
There is basis in the' record, however, for imposing liability upon Manion. At the trial, it was shown that there was a defect in the valve which permitted the air to leak into the new lift. The defect consisted of a sliver of low carbon steel, found in the valve when it was subsequently tested. The valve itself was made of stainless steel but the pipes to which the valve had been attached were made of low carbon steel, like the sliver. Manion testified that, on the morning of the accident, he cut the pipes before attaching them and that this produced shavings or turnings, metallic in nature.
From this evidence, the jury could infer that the sliver in the valve was caused by Manion. The sliver had to come from somewhere. Since it was not of the same substance (stainless steel) as the valve, there appears a sufficient basis for inferring that Manion caused it.
*167 Since such a defect in the valve would clearly energize the new lift, causing the chain to break, no foreseeability problem is present. For these reasons, we would affirm as to Manion.
We also affirm the dismissal of Manion’s cross claim against Joyce Cridland Company, the manufacturer of the valve. It would be improper to infer on any theory that the sliver of material — foreign to the metal of the valve, but identical to that supplied by Manion — was in the valve before Manion received it.
Accordingly, the order appealed from should be modified so as to provide for dismissal of the complaint against Smith, with costs to defendant Smith against the plaintiff, and, as so modified, affirmed, with costs to the plaintiff and the defendant, Joyce Cridland Company, against Manion.