THOMAS COUGHLIN, Respondent, *v.* SANFORD NALLITT Co., LTD., et al., Appellants, and CONGAREE IRON & STEEL Co., INC., Respondent.

First Department, February 22, 1973.

*James M. Leonard* of counsel (*McHugh, Heckman, Smith & Leonard,* attorneys), for Delco Steel Fabricators, Inc., appellant.

*Walter G. Evans* of counsel (*William F. Laffan, Jr.,* with him on the brief; *Evans, Orr, Pacelli, Norton & Laffan,* attorneys), for Sanford Nallitt Co., Inc., appellant.

*Jacob D. Fuchsberg* of counsel (*Otis Mark Waters* with him on the brief; *Timen & Waters,* attorneys), for Thomas Coughlin, respondent.

*Thomas R. Newman* of counsel (*Benjamin H. Siff* and *John J. Bower* with him on the brief; *Bower & Gardner,* attorneys), for Congaree Iron & Steel Co., Inc., respondent.

*Per Curiam.* Defendant Sanford Nallitt Co., Ltd. (Sanford) was the owner and general contractor of a shopping center being built in Dutchess County. Delco Steel Fabricators, Inc. (Delco) had a subcontract for the steel erection. Congaree Iron & Steel Co., Inc. (Congaree) had a subcontract for fashioning the steel to be used. Sucich was the mason contractor and plaintiff was a laborer in his employ. A few days prior to July 22, 1966, Congaree notified Delco that it would deliver the steel joists to the job site on July 22. This was some weeks prior to the contract delivery date, and Delco did not plan to have any men on the job at the time. It was Delco's contract obligation to unload the steel, and it consequently contacted Sanford's superintendent. The latter, a Mr. Applegate, as a personal favor undertook to find someone to unload the steel, and he shortly recommended a rigger who would do the job for some $600. Delco demurred and Applegate told Delco's representative that Sucich would do it for $350, provided that the work could be done by forklift. Delco agreed.

On July 22 Congaree delivered the steel in three trucks. The first truck was unloaded by Irwin, Sucich's foreman, without incident, but before unloading the second Irwin announced that he would need help. Applegate, who happened to be in the vicinity, responded by directing plaintiff to assist. In the course of unloading a batch of joists fell off the forklift, injuring plaintiff.

Delco could delegate the job of unloading. It would not be liable for the manner in which the subcontractor did the job unless the work was inherently dangerous or if it knew that

the manner of doing the work made it inherently dangerous. Hence the issue as to Delco was whether unloading material of this kind by means of a forklift was an inherently dangerous operation. There was testimony on this question which the jury decided as plaintiff contended.

Sanford's liability depends on two factual issues. The first refers to the place where the unloading was conducted. As general contractor Sanford could designate the precise spot. It is claimed that the ground where the delivery trucks were parked was so rough and uneven that the hazard involved in the use of a forklift was increased. It was also claimed that the direction to plaintiff amounted to directing him in his work. The jury found in favor of plaintiff on both these issues which were factually disputed.

The liability of Congaree, a third-party defendant on a claim by Delco, is predicated on the claim that the steel joists were improperly banded. This issue was resolved in favor of Congaree by the jury.

The issues of law were not seriously disputed by any party. It is argued that the decisive questions on which liability depended were not pinpointed in the charge with proper specificity. While it is true that the charge was more general than is desirable, it is also true that the attention of the court was not directed to this fault by any request or exception. We would therefore affirm (*Corriera* v. *Third Ave. Tr. Corp.*, 277 App. Div. 82, affd. 302 N. Y. 610), and only mention these circumstances to explain why, if there is to be a second trial for the reasons indicated below, that trial should be on all the issues.

The jury found a verdict in the sum of $325,000. This sum was arrived at mostly on the basis of loss of earnings. We find two essential errors in this conclusion. The predicate for the calculation of the loss is the wage of $3 an hour for a 40-hour week, which plaintiff was receiving at the time of the accident. For all that appears in the record plaintiff's entire working career consisted of three days. We believe this is far too tenuous a foundation from which to project a lifetime of employment, particularly in an industry as subject to cyclical unemployment as the building trades. Secondly, the evidence that plaintiff's injuries were incapacitating was far from satisfactory, and the verdict was more of a tribute to counsel's advocacy than an impartial appraisal of the facts. The claimed injuries were a skull fracture with consequent neurological sequelae, a serious injury to the arm and shoulder, an extensive cut of one ear, rib fractures, and soft tissue damage.

It appears that immediately after the accident plaintiff was taken to Highland Hospital, where a diagnosis was made, and plaintiff was the same day transferred to St. Francis Hospital, from which he was discharged after one week. No diagnosis of skull fracture was made at this hospital, and the absence of such a condition explains the discharge after only seven days. The claim of skull fracture rests upon a deductive initial diagnosis made at Highland Hospital from X-ray plates that did not show fracture lines. Significantly, no medical bills were introduced, and no doctor who treated plaintiff testified. That is not to say that plaintiff's case lacked medical testimony but that it came from experts who examined plaintiff for the purpose of testifying.

Against the dire conclusions of these experts are the concrete facts that plaintiff ever since the accident has been driving an automobile between 15,000 and 20,000 miles a year and that in his license applications he has denied any physical incapacity. While we are aware that applicants for a license — particularly those resident in areas not accessible to public transportation — are inclined to minimize their deficiencies in order to be able to get about by car, this is not plaintiff's situation. He operated a dump truck and sought a license as a truck driver.

After careful consideration, and giving plaintiff every reasonable interpretation of the testimony, we conclude that $175,000 is the highest figure that the testimony will justify.

The judgment entered June 20, 1972 (HELMAN, J. and a jury) should be modified, on the law and on the facts, by vacating judgment in favor of plaintiff and directing a new trial of the issues herein, with costs to abide the event, and otherwise affirmed with costs to third-party defendant Congaree Iron & Steel Co., Inc. against Delco Steel Fabricators, Inc., unless within 10 days of the entry of this order plaintiff stipulates to reduce the verdict to $175,000 (payable 68% by defendant Delco Steel Fabricators, Inc. and 32% by defendant Sanford Nallitt Co., Ltd.), and if so stipulated the judgment as so amended should be affirmed with costs to Congaree Iron & Steel Co., Inc. against Delco Steel Fabricators, Inc., and without costs to any other party.

McGIVERN, J. P., MARKEWICH, NUNEZ, LANE and STEUER, JJ., concur.

Judgment, Supreme Court, New York County, entered on June 20, 1972, unanimously modified, on the law and on the facts, by vacating judgment in favor of plaintiff and directing a new trial of the issues herein, with $60 costs and disbursements to abide the event, and otherwise affirmed, with $60 costs and

disbursements to third-party defendant Congaree Iron & Steel Co., Inc. against Delco Steel Fabricators, Inc., unless within 10 days of service upon plaintiff-respondent by defendants-appellants of a copy of the order entered herein, with notice of entry thereof, plaintiff-respondent serves and files in the office of the Clerk of the trial court a written stipulation reducing the verdict to $175,000 (payable 68% by defendant Delco Steel Fabricators, Inc. and 32% by defendant Sanford Nallitt Co., Ltd.), and if so stipulated the judgment as so amended is affirmed with $60 costs and disbursements to Congaree Iron & Steel Co., Inc. against Delco Steel Fabricators, Inc., and without costs and without disbursements to any other party.