**EASTERN AIRLINES, Plaintiff,**

v.

**JOSEPH GUIDA & SONS TRUCKING CO., INC., et al., Defendants,**

**and Third Party Actions.**

No. 84 CV 3000.

United States District Court,
E.D. New York.

Nov. 30, 1987.

Rivkin, Radler, Dunn & Bayh, New York City, for Bermudez Contracting Corp.

Gladstein & Issac, New York City, for Lizza Industries.

Newman, Schlau, Fitch & Burns, New York City, for Joseph Guida & Sons Trucking, Inc.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

On August 12, 1987, the Court received the annexed Report and Recommendation ("Report") of the Honorable A. Simon Chrein, United States Magistrate. None of the parties to the motions have filed written objections pursuant to 28 U.S.C. § 636(b)(1); Local R.Mag.P. 7. After a thorough review of the motion papers and the Report, I hereby adopt the Report as the opinion of this Court.

SO ORDERED.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE

August 12, 1987.

A. SIMON CHREIN, United States Magistrate.

This action was referred to the undersigned by the Honorable Joseph M. McLaughlin to hear and report on the defendant Bermudez Contracting Corp's (Bermudez) and defendant Shore, Sand and Gravel Co., Inc.'s (Shore Sand) motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and defendant Shore Sand's motion for costs and sanctions pursuant to Federal Rule 11 against defendant Joseph Guida & Sons Trucking Co., Inc. (Guida).

### Procedural History

This is an action by Eastern Airlines, Inc. against Lizza Industries, Inc. (Lizza), a contractor hired to do construction work at LaGuardia Airport, Lizza's subcontractor Bermudez, a landscaping company hired to landscape the same construction site and Guida, a trucking company hired to transport topsoil to the site, for damages to its airplane which occurred when a truck driven by Mr. Anthony Guida, an employee of defendant Guida, came in contact with the plaintiff's airplane at LaGuardia Airport. *See* Complaint.

Defendant Bermudez generally denied all the material allegations and cross claimed against the defendants Guida and Lizza. *See* Answer and Cross Complaint of Bermudez dated September 19, 1984.

Defendant Guida, in its answer, asserted claims against defendants Bermudez and Lizza for contribution or indemnification. *See* Answer of Defendant Guida at ¶ 12. Bermudez generally denied these claims. *See* Answer to Cross Claim by Bermudez dated December 19, 1984.

Defendant Guida then asserted third party claims against the Port Authority, D.P. S. Protective Systems, Inc. (D.P.S.) and Shore Sand for contribution and indemnification. *See* Second Third Party Complaint of Guida dated December 6, 1984. In response, third party defendant Shore Sand claimed that on the basis of indemnity or contribution, the co-defendants should be found liable for all or part of the judgment. *See* Answer to Third–Party Complaint of Shore Sand dated March 19, 1985 at ¶¶ 5, 6.

Plaintiff subsequently amended its complaint to include Shore Sand, D.P.S. and the Port Authority as defendants. *See* Amended Complaint of Eastern Airlines, Inc. dated May 9, 1985. The complaint with regard to defendant Shore Sand claimed that Shore Sand was an agent with respect to the landscaping project, controlled the activities of Guida and its employees, and, thus, was vicariously responsible for the damages suffered by plaintiff. *Id.* at ¶¶ 28, 29, 30.

Plaintiff then agreed to discontinue its action against defendants Bermudez and Shore Sand, although defendant Guida refused to discontinue its own action against them. *See* Plaintiff's Stipulation Discontin-

uing Action Against Co–Defendant Bermudez dated August 22, 1986; Plaintiff's Stipulation Discontinuing Action Against Co–Defendant Shore Sand dated August 22, 1986; Affidavit of Richard L. Newman in Opposition dated December 11, 1986 (Newman Affidavit); Affidavit of Jan Kevin Myers in Opposition dated December 24, 1986 (Myers Affidavit). Consequently, defendants Shore Sand and Bermudez have submitted motions for summary judgment and defendant Shore Sand has additionally moved for Rule 11 sanctions against defendant Guida.

### Facts

Plaintiff Eastern Airlines alleges that it sustained damages when a truck driven by an employee of defendant Guida collided with one of plaintiff's airplanes parked at LaGuardia Airport. *See* Newman Affidavit at ¶ 3.

Defendant Lizza had been hired to perform construction work at night on one of LaGuardia Airport's runways. *Id.* Lizza subsequently subcontracted landscaping work at the construction site to defendant Bermudez. *Id.* Defendant Bermudez, in turn, subcontracted with defendant Shore Sand to obtain topsoil for the landscaping work. *Id.* Shore Sand then made an oral contract with defendant Guida in which defendant Guida agreed to deliver two loads of topsoil from Shore Sand's facility in Melville, New York to the construction site at the airport. *Id.* Mr. Anthony Guida, an employee of defendant Guida, was delivering the topsoil pursuant to this contract when his truck collided with the plaintiff's airplane. *Id.*

The defendant Guida contends that defendant Shore Sand instructed it to have its trucks follow a lead truck dispatched by defendant Shore Sand. *Id.* at ¶ 6. This convoy of trucks would be guided by the lead truck to the airport, onto the correct runway and to the construction site. *Id.* Defendant Guida further alleges that the first truckload of topsoil was delivered to the construction site in this manner and that it followed the lead truck into and out of the airport. *Id.* After the first load of

topsoil was unloaded and the trucks safely left the airport, the convoy broke up and the trucks were left to return on their own. *Id;* Deposition of Anthony Guida dated October 31, 1985 (Guida Deposition) at p. 11. Mr. Guida returned to defendant Shore Sand's Melville facility, loaded his truck again and headed for the airport to drop off the second load of topsoil. Guida Deposition at p. 14. Mr. Guida alleges that he was not able to find defendant Shore Sand's lead truck but found his way to the construction site unaided. *Id.* at p. 15.

After delivering this second load of topsoil and attempting to leave the airport, however, Mr. Guida became lost. Newman Affidavit at ¶ 3. He claims that although he asked for directions from a guard employed by defendant DPS stationed on the runway, the guard misdirected him and caused him to collide with plaintiff's airplane. *Id.* The plane was located approximately 300 to 400 yards from the construction site and between 30 and 40 feet from the roadway which defendant Guida's trucks used during the first delivery. Newman Affidavit at ¶ 9.

It is undisputed that defendant Bermudez and defendant Shore Sand did not hire the security guard service (DPS) which employed the guard who defendant Guida alleges misdirected him. *See* Newman Affidavit at ¶ 3. Defendant Guida alleges however, that defendant Shore Sand formed and organized the convoy of trucks and assured defendant Guida that it would be provided with means of safe ingress and egress from the airport when the convoy arrived with the first delivery and on subsequent trips. *Id.* Therefore, defendant Guida alleges that Shore Sand undertook to direct and control the method and manner in which Guida performed making it strictly liable for any negligence by defendant Guida.

In addition, defendant Guida alleges that defendant Bermudez' employees undertook to sign the drivers' tickets for the deliveries and direct the truckers to where they would unload the topsoil also directing and controlling the manner in which Guida performed. Guida Deposition at pp. 18–19.

Defendant Guida further contends that after its driver dumped the second load he asked a Bermudez employee for instructions as to how to leave the airport. This employee was unable to provide the requested information and Mr. Guida then obtained instructions from the DPS guard. *Id.* at p. 19.

The defendant Guida, therefore, contends that if it is found negligent in causing the accident, that both defendant Bermudez and defendant Shore Sand are liable for contribution or indemnification based on their negligence, breach of warranty, breach of contract and strict liability. *See* Answer at ¶ 12; Third Party Complaint of Guida Against DPS and Shore Sand at ¶ 6. These claims are based on defendant Guida's allegations that defendants Shore Sand and Bermudez undertook to guide, direct and control the defendant Guida's ingress and egress to and from the airport, *see* Myers Affidavit at ¶¶ 7, 10; Newman Affidavit at ¶ 14, and that the inherently dangerous nature of this activity (night time construction work near the runway of a busy airport) causes both defendants Bermudez and Shore Sand to be strictly liable. *See* Myers Affidavit at ¶ 12; Newman Affidavit at ¶¶ 7, 11.

Defendant Shore Sand denies these allegations and maintains that it did not control the manner in which defendant Guida delivered the topsoil. *See* Affidavit of Alan Wyle in Support of Defendant Shore Sand's Motion for Summary Judgment dated November 25, 1986 (Shore Sand Affidavit) at p. 7. It asserts that defendant Guida admitted its negligence in the driver's deposition and that there is no basis to impute this negligence to defendant Shore Sand. *Id.*

Defendant Bermudez also denies the defendant Guida's allegations, and asserts that it had nothing to do with directing the defendant Guida into or out of the airport and therefore contends that there is no basis for liability. Bermudez Affidavit at p. 6.

Based on the following analysis, the undersigned recommends that summary judgment be denied to defendant Shore Sand, granted to defendant Bermudez and that defendant Shore Sand's motion for sanctions be denied.

## Discussion

### I. Standards for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(e) further provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings; but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

All inferences from the underlying facts must be viewed in a light most favorable to the party opposing the summary judgment motion. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–588, 106 S.Ct. 1348, 1356–1357, 89 L.Ed.2d 538 (1986). The mere existence of factual issues not material to the claims before the court is insufficient to defeat a summary judgment motion. *Knight v. United States Fire, Ins. Co.*, 804 F.2d 9, 11–12 (2d Cir.1986). The "substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, ——, 106 S.Ct. 2505, 2510 (1986).

When the moving party has met its burden under Rule 56(c) the non moving party must provide significant probative evidence which pierces the pleadings and demonstrates that there is a genuine need for a trial. *Matsushita Electric Industrial Co.*, 475 U.S. at 586, 106 S.Ct. at 1356; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at ——, 106 S.Ct. at 2511. The evidentiary standard for summary judgment mirrors the standard for directed verdict under Fed.R.Civ.P. 50(a).

In essence, ... the inquiry under each is the same: whether the evidence presents

a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

. . . .

... [Such a standard] necessarily implicates the substantive evidentiary standard of proof that would apply at a trial on the merits. . . .

. . . .

... [T]he judge must view the evidence presented through the prism of the substantive evidentiary burden. . . . The question here is whether a jury could reasonably find *either* that the plaintiff proved his case by the quality and quantity of evidence required by the governing law *or* that he did not.

*Anderson,* 477 U.S. at —— – ——, 106 S.Ct. at 2512–13 (emphasis in original).

Thus, "there is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find [that the non moving party met its evidentiary burden]." *Id.* 106 S.Ct. at 2513. If each element of a nonmoving plaintiff's claim is not supported by sufficient evidence from the record taken as a whole, there is no genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).           .

### *Defendant Shore Sand's Motion for Summary Judgment*

Defendant Shore Sand contends that it is not liable for the plaintiff's damages as a matter of law since plaintiff's damages were caused by the independent acts of its subcontractor, defendant Guida, for which they are not responsible. *See* Defendant Shore Sand's Memorandum of Law in Support of the Motion for Summary Judgment dated November 25, 1986 (Defendant Shore Sand's Memo) at pp. 2, 4. It also contends that if it is not liable due to a lack of proximate cause. *Id.*

The defendant Guida, however, claims that defendant Shore Sand is liable since the work to be performed, the delivery of topsoil at night on the airport's runways, was inherently dangerous. In addition, defendant Guida contends that defendant Shore Sand supervised the methods and manner in which it entered, manuevered through and left the airport. Guida Affidavit at ¶¶ 7, 8, 11, 12. Defendant Guida, therefore, asserts that although defendant Shore Sand is a general contractor, there is a material issue of fact regarding whether it is liable for the allegedly negligent and independent acts of its subcontractor, defendant Guida, and summary judgment should be denied.

It is well settled that general contractors are not responsible for the negligent, independent acts of their subcontractors. *Moore v. Charles T. Wills, Inc.,* 250 N.Y. 426, 165 N.E. 835 (1929); *Schnur v. Shanray Construction Corp.,* 31 A.D.2d 513, 294 N.Y.S.2d 652 (1st Dep't 1968). If, however, the work is inherently dangerous, *Schwartz v. Merola Bros. Construction Corp.,* 290 N.Y. 145, 48 N.E.2d 299 (1943); *Coughlin v. Sanford Nallitt Co.,* 41 A.D. 2d 33, 341 N.Y.S.2d 1 (1st Dep't 1973); *Kojic v. City of New York,* 76 A.D.2d 828, 428 N.Y.S.2d 305 (2d Dep't 1980), or if the general contractor interferes with, controls or directs the manner in which the subcontractor performs the work, then the general contractor can be held liable for the subcontractor's negligence. *Horn v. State,* 31 A.D.2d 364, 297 N.Y.S.2d 795 (3d Dep't 1969); *see also Hanley v. Central Savings Bank,* 255 A.D. 542, 8 N.Y.S.2d 371 (1st Dep't 1938), *aff'd,* 280 N.Y. 734, 21 N.E.2d 513 (1939).

In the present case, the defendant Guida contends that the delivery of the topsoil in an airport at night is an inherently dangerous activity and was recognized as such by Shore Sand. *See* Guida Affidavit at ¶ 7. In order for the inherently dangerous exception to apply, however, the danger must be readily apparent and the accident must be foreseeable. *McDonald v. Shell Oil Co.,* 20 N.Y.2d 160, 228 N.E.2d 899, 281 N.Y.S.2d 1002 (1967); *see also Palsgraf v. Long Island Railroad,* 248 N.Y. 339, 162 N.E. 99 (1928). A mere showing that precautions must be taken to avoid a dangerous condition is insufficient to classify an activity as inherently danger-

ous. *See Tropea v. Shell Oil Co.*, 307 F.2d 757 (2d Cir.1962). Delivering topsoil by truck should not have created a danger to members of the public who were using the roads along the truck's route in the usual and ordinary manner. *Boylhart v. DiMarco & Reimann, Inc.*, 270 N.Y. 217, 200 N.E. 793 (1936); *Wright v. Tudor City Twelfth Unit, Inc.*, 276 N.Y. 303, 12 N.E.2d 307 (1938). Moreover, in order for the work to be inherently dangerous, it must be " 'attended with danger, no matter how skillfully or carefully it is performed.' " *Carmel Associates Inc. v. Turner Construction Co.*, 35 A.D.2d 157, 314 N.Y.S.2d 941 (1st Dep't 1970) (*quoting Janice v. New York*, 201 Misc. 915, 920, 107 N.Y.S.2d 674, 679 (1957)).

Based upon a review of the case authority regarding inherently dangerous activities, the undersigned finds that the facts presented in this case are distinguishable from those in which the activity was found to be inherently dangerous. *See, e.g., Alva Steamship Co. v. City of New York*, 616 F.2d 605 (2d Cir.1980) (salvaging 30,000 gallons of an explosive liquid from a damaged hull whose doors, gaskets and hinges could not be made secure because of a prior explosion); *Wright*, 276 N.Y. at 307, 12 N.E.2d at 308 (soaping mats on a busy public sidewalk); *Rohlfs v. Weil*, 271 N.Y. 444, 3 N.E.2d 588 (1936) (using scaffolding over a public sidewalk); *Boylhart*, 270 N.Y. at 221, 200 N.E. 794 (storing a pile of metal beams in the street); *Deming v. Terminal Ry.*, 169 N.Y. 1, 61 N.E. 983 (1901) (raising an unguarded embankment in a highway); *Carmel Associates, Inc.*, 35 A.D.2d 157, 314 N.Y.S.2d 941 (blasting operations); *Hanley*, 255 A.D. at 543, 8 N.Y. S.2d at 372 (demolishing a building in a crowded section of a city); *Langevin v. Schaller*, 163 A.D. 52, 148 N.Y.S. 534 (3d Dep't 1914) (roping off parts of the sidewalk); *Mullins v. Siegel Cooper Co.*, 95 A.D. 234, 88 N.Y.S. 737 (2d Dep't 1904), *aff'd*, 183 N.Y. 129, 75 N.E. 1112 (1905) (removing parts of the sidewalk); *Ramsey v. National Contracting Co.*, 49 A.D. 11, 63 N.Y.S. 286 (2d Dep't 1900) (leaving a pile of metal rails in the street); *Downey v. Low*, 22 A.D. 460, 48 N.Y.S. 207 (2d Dep't 1897) (leaving a chute open in a public way).

In fact, many of the cases have rejected classifying activities which clearly appear to be more dangerous than delivering topsoil to an airport construction site at night, as inherently dangerous. *See, e.g., Tropea*, 307 F.2d at 772 (filling or cleaning an oil tank); *McDonald*, 20 N.Y.2d at 166, 228 N.E.2d at 901, 281 N.Y.S.2d at 1005 (installing a hydraulic lift); *English v. Merroads Realty Corp.*, 288 N.Y. 93, 41 N.E.2d 472 (1942) (filling an oil tank); *Weinfeld v. Kaplan*, 282 N.Y. 348, 26 N.E.2d 287 (1940) (leaving an open register in the floor while repairing a heating system); *Parsan v. Johnson*, 208 N.Y. 337, 101 N.E. 879 (1913) (installing new flooring); *Horn*, 31 A.D.2d at 364, 297 N.Y.S.2d at 795 (3d Dep't 1969) (concrete breaking and pile driving); *McNulty v. Ludwig & Co.*, 125 A.D. 291, 109 N.Y.S. 703 (2d Dep't 1908) (installing a sign over a public way).

Although the delivery in this case took place at an airport at night, it should not have been a dangerous activity for a trucking company that regularly delivers to construction areas. It was not foreseeable and readily apparent that Mr. Guida would collide with an airplane parked more than 20 feet from the closest roadway. Therefore, the undersigned finds that as a matter of law this activity was not inherently dangerous.

Defendant Guida, alternatively argued that defendant Shore Sand directed and controlled the manner in which this activity was performed, imputing liability to defendant Shore Sand. Guida alleges that Tommy Desantis, a representative of defendant Shore Sand, instructed its driver to follow the lead truck dispatched by Shore Sand. Guida Deposition at pp. 10–11. This procedure was allegedly followed during the first delivery. *Id.* At the delivery of the second load, however, it is alleged that the string of trucks disbanded and that Shore Sand thereafter failed to provide a lead truck or any other guide to the construction site. *Id.* Thus, Guida asserts that defendant Shore Sand contracted

to provide it with a safe means of ingress and egress to and from the airport, yet failed to see that the trucks entered and exited the airport safely. Newman Affidavit at ¶¶ 7, 8. Defendant Shore Sand formed the convoy of trucks to see that the drivers arrived at the site and left the airport safely recognizing the danger. *Id.* at ¶ 8. Defendant Guida further alleges that defendant Shore Sand also instructed that there would be guards with flashlights and police cars to guide the trucks on and off the runway. Guida's Deposition at p. 10.

Viewing these facts in the light most favorable to the nonmoving party, defendant Guida, I find that there is an issue of fact regarding whether defendant Shore Sand, although it had subcontracted the work to defendant Guida and notwithstanding the fact that the accident occurred on the defendant Guida's second trip to and from the construction site after which defendant Guida arguably knew where to go, had retained supervisory powers over the manner in which the work by defendant Guida was performed. *See Hanley*, 255 A.D. at 543, 8 N.Y.S.2d at 373. If defendant Shore Sand directed the manner in which this job was to be done it could be found liable for injuries to a third party. *See Horn*, 31 A.D.2d at 366, 297 N.Y.S.2d at 798. Defendant Shore Sand's reliance on the case of *Shapiro v. Robinson*, 102 A.D.2d 822, 476 N.Y.S.2d 596 (2d Dep't 1984), *aff'd*, 63 N.Y.2d 896, 472 N.E.2d 1031, 483 N.Y.S.2d 203 (1984) is misplaced. In *Shapiro*, the defendant construction company had no control over the manner in which the truck driver was to perform. *Shapiro*, 102 A.D.2d at 822, 476 N.Y.S.2d at 597.

While the undersigned finds that defendant Guida failed to allege a genuine issue of fact on whether this job was inherently dangerous, it has presented a triable issue on whether defendant Shore Sand directed and controlled the manner in which the defendant Guida was to perform. Therefore, the undersigned respectfully recommends that Shore Sand's motion for summary judgment be denied.

### Defendant Bermudez' Motion for Summary Judgment

Defendant Bermudez contends that it is not liable for the plaintiff's damages as a matter of law since plaintiff's damages were proximately caused by the negligent acts of an independent contractor, defendant Guida, for which it is not liable. *See* Defendant Bermudez' Memorandum of Law in Support of the Motion for Summary Judgment dated December 12, 1986 (Defendant Bermudez' Memo) at Point II. However, defendant Guida claims that defendant Bermudez is liable in contribution and indemnification since the work to be performed was inherently dangerous and since defendant Bermudez supervised the methods and manner in which the trucks entered and exited from the construction site. *See Myers* Affidavit at ¶ 10.

As already stated, the undersigned finds that as a matter of law, the job of driving through an airport at night in order to deliver topsoil to a construction site is not an inherently dangerous activity for a truck driver. *See supra* at pp. 1395–96.

Based on the allegations, I find that Guida has not alleged sufficient facts to indicate a genuine issue of fact regarding whether Bermudez directed or controlled the manner in which the job was to be done so as to be a proximate cause of plaintiff's damages. While I agree that the general contractor, defendant Bermudez, retained some limited power of general supervision for the purpose of seeing that the work was being properly done by the subcontractor according to the plans and specifications, this alone will not render defendant Bermudez liable for the independent negligent act of defendant Guida. *Moore*, 250 N.Y. at 429, 165 N.E. at 836; *Uppington v. City of New York*, 165 N.Y. 222, 59 N.E. 91 (1901); *Horn*, 31 A.D. at 366, 297 N.Y.S.2d at 798. The mere retention of the power of general supervision to see that the overall work proceeds properly and to coordinate the actions of subcontractors on the site is insufficient to find the contractor liable for the negligent acts of its subcontractors. *Broderick v. Cauldwell–Wingate Co.*, 301

**1398**

N.Y. 182, 93 N.E.2d 629 (1950); *Schnur,* 31 A.D.2d at 513, 294 N.Y.S.2d at 654. The facts alleged in this case only indicate that the drivers, trucks, and delivery details were under the control and direction of either defendants Guida or Shore Sand, not defendant Bermudez. Based on these findings as a matter of law defendant Bermudez cannot be held responsible. Thus, I respectfully recommend that defendant Bermudez' motion for summary judgment be granted.

### Defendant Shore Sand's Motion For Rule 11 Sanctions

On the basis of the above analysis regarding defendant Shore Sand's motion for summary judgment and the undersigned's recommendation that it be denied, Rule 11 sanctions are not warranted.

Rule 11 of the Federal Rules of Civil Procedure imposes "appropriate sanctions" on the attorney or represented party in situations wherein a pleading is not well grounded in fact or warranted by existing law and that it is interposed for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Since I find that a genuine issue of material fact exists, defendant Guida's claims are clearly not frivolous as defined by Rule 11. Therefore, I recommend that defendant Guida's motion for Rule 11 sanctions be denied.

### Conclusion

Based on the foregoing analysis, I recommend that defendant Shore Sand's Motion for summary judgment and for sanctions be denied and defendant Bermudez' motion for summary judgment be granted.