■ VICTOR G. TOSCARELLI, Respondent, v JAMES H. PURDY et al., Appellants. [629 NYS2d 833] —Mercure, J. Appeals (1) from a judgment of the Supreme Court (Bradley, J.), entered April 12,

1994 in Sullivan County, upon a verdict rendered in favor of plaintiff, and (2) from an order of said court, entered May 5, 1994 in Sullivan County, which, *inter alia*, denied certain defendants' motions to set aside the verdict.

Laura Tucker purchased an automobile and financed it through a North Carolina office of defendant General Motors Acceptance Corporation (hereinafter GMAC). Tucker thereafter moved to New York and, when Tucker became seriously delinquent in her payments, GMAC assigned the account to its Orange County office for collection. On May 17, 1991, with the loan payments about to become three months overdue, GMAC made a decision to repossess the vehicle. GMAC engaged defendant Prestige Recovery Service, Ltd. (hereinafter Prestige), the firm that handled its Sullivan County repossessions, to perform the task. A representative of Prestige, defendant Robert J. McCrann, in turn hired defendant James H. Purdy, proprietor of defendant J & H Automotive, Inc., to truck the vehicle from plaintiff's residence, where Tucker was staying at the time.

In the early morning of May 22, 1991, McCrann and Purdy traveled to plaintiff's home in Purdy's flat-bed truck. While the two were in the process of hoisting the vehicle onto the truck, plaintiff came out of the house and verbally confronted them. After Tucker's automobile was loaded on the truck, Purdy began to drive from the scene and, tragically, ran over plaintiff, causing the personal injuries giving rise to this negligence action. After trial, a jury apportioned liability in the following percentages: Purdy and J & H Automotive—1%, Prestige and McCrann—27%, GMAC—51% and plaintiff—21%; damages of $1.75 million were awarded. Defendants appeal from the judgment entered on the jury's verdict and the order denying their motions to set aside the verdict.

Turning first to the issue of liability, we agree with GMAC that Supreme Court should have directed a verdict dismissing the complaint against it at the close of the evidence (*see*, CPLR 4401). Even assuming, arguendo, that GMAC's negligence in ordering the repossession could be found to have proximately caused plaintiff's injuries, we conclude that there is no competent evidence to support a finding of any such negligence.

Initially, there being no question that Prestige was an independent contractor, GMAC could be found liable for Prestige's acts only upon competent evidence that it "engage[d] an unqualified or careless contractor or, when on notice of deficient performance, fail[ed] to prevent the continuance of such negligence" (*Del Signore v Pyramid Sec. Servs.*, 147 AD2d 759,

760; *see, Cichon v Brista Estates Assocs.*, 193 AD2d 926; *Zelen v City of Saratoga Springs*, 187 AD2d 818). Notably, plaintiff produced no evidence that GMAC had any knowledge of any previous acts of incompetence or inexperience on the part of Prestige (*see, Hesch v Seavey*, 188 AD2d 808; *Annonio v Balzano*, 139 AD2d 943, *lv denied* 72 NY2d 806; *La Manna v Colucci*, 138 AD2d 901, *affd* 73 NY2d 898). To the contrary, the evidence showed that the decision to hire Prestige was based upon GMAC's long-term relationship with its principal and that GMAC initially hired Prestige on a three-month trial basis and entered into a long-term relationship only after Prestige's satisfactory performance during that period. In fact, the evidence showed that Prestige had previously performed approximately 200 to 300 repossessions without incident. Under the circumstances, we conclude that plaintiff failed to meet his burden of proof on the issue of negligent hiring (*see, La Manna v Colucci, supra*).

Similarly, in the absence of evidence that GMAC affirmatively acted to direct or instruct Prestige or assumed control over its work, there is no basis for liability on the theory of negligent instruction and supervision (*see, Broderick v Cauldwell-Wingate Co.*, 301 NY 182, 187; *Thomassen v J & K Diner*, 152 AD2d 421, 424, *appeal dismissed* 76 NY2d 771). We are not persuaded that GMAC's submission of its general policy guidelines competently supported a finding that such control existed (*see, Broderick v Cauldwell-Wingate Co., supra*).

Nor are we persuaded that the evidence supported a finding that GMAC was negligent in ordering the repossession. There is simply no probative evidence to support plaintiff's creative theories that GMAC's Orange County branch could not order a repossession without express direction from the North Carolina branch or that GMAC somehow breached a duty to plaintiff by failing to provide Prestige with a key to Tucker's vehicle. Further, we reject the contention that GMAC failed to supply Prestige with "proper credentials to evidence its authority to repossess the Tucker vehicle". The two-page document transmitted to Prestige (received in evidence as plaintiff's exhibit No. 1D) identified (1) Tucker by name, Social Security number, date of birth and place of employment, (2) the vehicle by year, make, model, vehicle identification number and color, and (3) GMAC as secured party, including an identification of its issuing and receiving branches, the precise status of Tucker's account, and a listing of the past-due payments by amount and due date. We are similarly unpersuaded that the vague, conclusory, inconsistent and implausible testimony of

Tucker and plaintiff created a genuine factual issue as to whether the account was in default at the time the repossession was ordered. The documentary evidence submitted by GMAC established that, as of May 20, 1991, Tucker was three months in arrears.

Further, even accepting plaintiff's version of the events, it remains undisputed that the payment due May 19, 1991 had not been received at the time of the repossession. The bold assertion of plaintiff's brief that "GMAC negligently affirmatively advised [plaintiff] that there would be no repossession if he mailed a payment on the Tucker account to the North Carolina branch" is not borne out by the record. To the contrary, plaintiff merely testified concerning his conversation with an unidentified "gentleman at GMAC" and his (clearly unjustified) assumption "that the account was about to go sour or into collections * * * that it was one payment behind * * * [and that a single payment mailed by plaintiff on May 14, 1991] would bring it current and up-to-date".

We now turn to the issues concerning the jury's award of damages. Initially, in view of evidence that plaintiff suffered multiple blunt traumas, a severe skin tear on his right knee and thigh, requiring debridement and skin grafting, a broken rib, a punctured and collapsed lung, a fractured scapula, bulging vertebral discs and torn knee cartilage, we cannot say the award of $100,000 for past and $541,000 for future pain and suffering deviates materially from reasonable compensation (*see, Van Deusen v Norton Co.*, 204 AD2d 867, 870-871). We agree with defendants, however, that the jury's awards of $50,000 for past mental suffering and $990,000 for future economic loss must be set aside. As for the former, it suffices to note that mental suffering is a component of pain and suffering (*see, McDougald v Garber*, 73 NY2d 246; *Pallotta v West Bend Co.*, 166 AD2d 637) and that, as a result, no separate award may be made therefor.

In view of the fundamental premise that loss of earnings or earning capacity must be established with reasonable certainty (*Kirschhoffer v Van Dyke*, 173 AD2d 7, 10) and will be reduced if based upon mere speculation (*Stringile v Rothman*, 142 AD2d 637), we conclude that the jury's award of lost earnings of $30,000 per year for 33 years cannot be sustained. Although the record established that plaintiff earned approximately $19,500 in 1990 as an entertainer, there is considerable uncertainty as to his additional earnings. In our view, plaintiff's testimony that he received "medical benefits and meals" lacked sufficient detail as to the nature and value of

the benefits to support any award. Further, plaintiff's testimony that he had quarterly net profits of $1,500 to $2,000 from his electronics business was directly contradicted by his 1990 Federal Schedule C, which showed a loss of $6,504. Even the complete elimination of the claimed depreciation expense of $4,153 fails to raise the business to a profitable level. Moreover, plaintiff testified that after the accident he was still earning half of his previous profits, establishing only a 50% diminution of earnings from that source.

Under the circumstances, we conclude that there is no basis for a finding that plaintiff's lost earnings exceeded $24,000 per year. Further, the jury's implicit conclusion that plaintiff would continue working as a full-time nightclub entertainer for his entire 33-year life expectancy is shocking and shall be set aside in the interest of justice (see, Abreu v Ferrer, 198 AD2d 150). A new trial will be ordered on the issue of damages unless plaintiff shall stipulate to reduce the economic component of the damage award to $480,000 ($24,000 per year for 20 years) (see, NY, PJI, Appendix B, Table 1 [1995 Supp]).

In view of our dismissal of the complaint against GMAC, a new trial shall be ordered on the issue of liability. The parties' remaining contentions have been considered and found either lacking in merit or academic in view of our determination.

Cardona, P. J., White, Peters and Spain, JJ., concur. Ordered that the judgment and order are reversed, on the law, without costs, complaint dismissed against defendant General Motors Acceptance Corporation and matter remitted to the Supreme Court for a new trial on the issue of liability against the remaining defendants, and a new trial ordered on the issue of damages unless, within 30 days after service of a copy of the order herein, plaintiff stipulates to reduce the verdict in his favor to $1,190,000.