Basil WAITE, Plaintiff,

v.

AMERICAN AIRLINES, INC., Defendant.

No. 98 Civ. 4807(SAS).

United States District Court, S.D. New York.

July 29, 1999.

---

Robert Hiltzik, Bunting & Hiltzik, Westbury, NY, for plaintiff.

Lewis R. Silverman, Renzulli & Rutherford, LLP, New York City, for defendant.

*OPINION AND ORDER*

SCHEINDLIN, District Judge.

## I. Introduction

Plaintiff Basil Waite ("Waite") originally brought this personal injury action against defendant American Airlines, Inc. ("American") in the Supreme Court of New York, Bronx County. American removed the action to the Southern District of New York and now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, American's motion for summary judgment is granted.

## II. Background

Plaintiff began working in September 1995 as a baggage handler for AMR Services Corporation ("AMR"), an independent contractor providing baggage handling services to American at its terminal at John F. Kennedy International Airport in Jamaica, Queens. *See* Complaint ("Compl.") ¶ 8. On his first day of work, plaintiff received on-the-job training from his supervisor, an AMR employee, that consisted of instructions on how to lift bags from the ticket counter and place them on the conveyor belt. *See* Deposition of Basil Waite ("Waite Dep.") at p. 31.

On or about November 18, 1995, plaintiff reported for his usual shift beginning at 6:00 a.m. *See id.* at pp. 26, 49. From 6:00 a.m. to 10:15 a.m., the baggage belt carrying the bags away from the ticket counter was working normally. *See id.* at pp. 56–57. At approximately 10:15 a.m., plaintiff noticed a bag on the conveyor belt that was slightly twisted and hanging over the edge of the belt. *See id.* at pp. 57–58, 65. Realizing that the bag would be unable to proceed around the curve of the conveyor, Waite attempted to straighten the bag with his right hand. *See id.* at pp. 66–68. In the process, Waite's sleeve got caught in the gap where two belts meet and the roller of one of the belts pulled and twisted his right hand and forearm underneath the connecting belt. *See id.* at pp. 69–77. A

co-worker hit the emergency button to stop the belt, and American's maintenance personnel dismantled the machine to free Waite's arm from the belt. *See id.* at pp. 80–81, 85–89. American's maintenance workers then reassembled the machine, which continued to function normally. *See* Deposition of John Klinger ("Klinger Dep."), facility maintenance mechanic for American, at pp. 29–30; Deposition of Vito Martino ("Martino Dep."), American's supervisor of the facilities department at the time of the accident, at pp. 54–56.

As a result of this accident, Waite suffered pain and inflammation in his right arm, causing him to lose normal use of his arm and hand for four months. During this time, Waite kept his arm bandaged and in a sling. *See generally,* Waite Dep. at pp. 90–108. Waite was confined to his home for two months and did not work for almost two years. *See id.* at pp. 121–22. He still has not regained full use of his right arm; Waite can now lift up to 35 pounds but was previously able to lift up to 100 pounds. *See id.* at pp. 114–17, 141.

Waite has not been able to return to his previous job as a baggage handler. He began looking for "light duty work" upon his doctor's authorization, and found a job as a security guard at a Rite–Aid store in September 1997. *Id.* at pp. 135–38. He received workers' compensation benefits from AMR for treatment of his injuries.[1] *See id.* at p. 132.

### III. Jurisdiction

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen of New York and defendant is a Delaware corporation with its principal place of business in Texas. Plaintiff seeks $1,000,000 in damages.

---

[1]. Because plaintiff received workers' compensation benefits from AMR pursuant to New York Workers' Compensation Law § 10, he is precluded from suing his employer. His receipt of benefits is his exclusive remedy against his employer. *See* New York Workers' Compensation Law § 11; *Jackson v. Tivo-*

### IV. Legal Standard for Summary Judgment

A motion for summary judgment may be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant has the burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997). Once this burden has been met, the non-moving party must come forward with evidence that is more than "mere speculation and conjecture," *Western World Insurance Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990), but "would be sufficient to support a jury verdict in its favor." *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995).

In determining whether summary judgment should be granted, the court resolves all ambiguities and draws all reasonable inferences against the moving party. *See D'Amico v. City of New York,* 132 F.3d 145, 148 (2d Cir.1998). The moving party, however, is not required to affirmatively disprove unsupported assertions made by the non-movant, *see Celotex,* 477 U.S. at 323, 106 S.Ct. 2548, and if the evidence presented by the non-movant is "merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas,* 143 F.3d 105 (2d Cir. 1998) (quoting *Anderson,* 477 U.S. at 249–250, 106 S.Ct. 2505). The court must also examine "the substantive law applicable to

---

*li Towers Housing Co., Inc.,* 176 A.D.2d 918, 575 N.Y.S.2d 370 (2d Dep't 1991) (employee injured while repairing boiler equipment was precluded from suing both his limited partnership employer and its general partners due to receipt of workers' compensation benefits).

the underlying litigation since that law dictates which facts are material." *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 572 (2d Cir.1993) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

## V. Discussion

■ There are four bases on which recovery is possible from the employer of an independent contractor. These are where: (1) the employer assumes a specific duty under the contract with the independent contractor that the employer breached; (2) the employer had a common law or statutory duty to maintain a safe premises; (3) the employer had a common law or statutory duty to control or perform the work; and (4) the employer is vicariously liable for negligence of an independent contractor where the work contracted for is inherently dangerous. *See Rosenberg v. Equitable Life Assurance Society of the United States*, 79 N.Y.2d 663, 584 N.Y.S.2d 765, 767, 595 N.E.2d 840 (1992). Waite fails to make out a prima facie case under any of these theories.

### A. American Did Not Assume a Specific Duty to Train AMR Employees

■ Waite claims that American had a responsibility to require AMR employees to be trained to stop the conveyor belt when adjusting baggage. American's failure to train or to require specific training for AMR employees, Waite contends, created a "dangerous condition" that violated American's common law duty to maintain a safe premises. This argument fails because American had no duty to train AMR employees in the proper method of handling baggage under its contract with AMR.

If Waite did not receive training to stop the belt before attempting to reposition baggage, and that lack of training created a dangerous condition, then liability falls

upon AMR, the company that had the sole responsibility under contract with American to train its employees. As Waite has already recovered workers' compensation from AMR, he is barred from further recovery from that party. *See* footnote 1, *supra.*

The Core Agreement for Services between American and AMR (the "Services Agreement"), effective May 1995 to May 2000, provides that employees of AMR are not to be considered the employees of American. *See* American's Affidavit in Support of Motion for Summary Judgment, Exhibit C, Services Agreement; Waite's Affirmation in Opposition to Defendant's Motion for Summary Judgment, Exhibit D. Under the contract, the work and methods of operation of AMR employees are under its sole direction. The Services Agreement states:

> The relationship between American and [AMR] shall be that of independent contractors for all purposes, and in no event shall persons employed by either party be held or construed to be employees of the other. All persons performing work hereunder and the manner and details of performance thereof, shall be under the exclusive control of [AMR], and [AMR] shall have sole right to direct such persons.

Services Agreement at § 12.

The Services Agreement also specifies that AMR, not American, is responsible for training the baggage handlers. American's responsibility to AMR's employees under the Services Agreement is limited to the duty to make available, at AMR's request and expense, initial start-up training classes for certain job categories. Baggage handlers are not one of those categories. AMR, as an independent contractor, was required to train its own employees in baggage handling. *See* Services Agreement § 4 and Exhibit D.[2]

2. The Services Agreement provides in relevant part:
 (a) American shall make available, at [AMR's] request and at its sole cost and expense, upon the terms and conditions set forth in Exhibit D, initial start-up training for [AMR] personnel who will provide Services in the job categories further described in Exhibit D. Contractor shall be responsible, at its sole cost and expense, for any further training necessitated by employee

### B. American Did Not Breach Any Common Law Or Statutory Duties to Maintain a Safe Premise

#### 1. Waite Has Not Established a Breach of Any Common Law Duty to Maintain a Safe Working Environment

Under New York law, there is a common law duty to use reasonable care to maintain a premises in a reasonably safe condition for all foreseeable persons who may come on to a premises and for foreseeable uses. *See Strausser v. Dow Chemical Co.*, 96 Civ. 2494, 1998 WL 92423, at *4 (S.D.N.Y. March 3, 1998); *see also* 85 *New York Jurisprudence*, § 23, "Scope of a Duty as Affected by Customary Use of Premises" (2d ed.1990); *see generally* 85 *New York Jurisprudence*, §§ 22–50. There is also a duty to warn where a person could not reasonably be expected to anticipate a dangerous condition.[3] *See id.* Waite has not demonstrated that a dangerous condition existed, that there was a defect in the conveyor belt about which American knew or should have known, or that the conveyor belt was inherently dangerous. The fact of his injury does not itself substantiate the allegation of a dangerous condition in the premises.

American might have violated the duty to maintain a safe premises if it knew that workers (its own or others) either had stuck or were reasonably likely to stick their hands into the moving machine and that the machine would then catch and injure them. However, Plaintiff has not proffered any such evidence.[4] In the absence of such knowledge or reasonable belief, American had no duty to place a warning on the machine or require AMR to provide special training to that effect. *See* 85 *New York Jurisprudence*, § 23. American could have created a safer premises by placing a warning on every piece of machinery, regardless of any notice of its potential danger; however, the duty to maintain a safe premises does not extend to the duty to create the safest possible premises in anticipation of any eventuality. *See Prosser and Keaton on Torts*, § 32, pp. 171–72 (5th ed.1984). American therefore did not create or tolerate a known dangerous condition in breach of the duty to maintain a safe premises.[5]

For the reasons elaborated above, Waite also has not demonstrated that American breached its lease with the Port Authority. One provision of that lease is that American ensure "the highest standards of safety" in the facility that it leases

---

turnover or failure to satisfactorily complete the initial training.
(c) [AMR] shall be required, at its sole cost and expense, to provide or arrange for ongoing and recurrent training of its personnel to ensure that all Services are provided in accordance with American's Specifications.
Services Agreement at §§ 4(a) & (c). Exhibit D of the Services Agreement consists of a list of available training classes provided by American, including those on passenger service software and cargo operations procedures.

3. I will not address the different duties of care that may or may not be due to different categories of persons (e.g., bare licensee versus business guest). Suffice it to say that Waite was not an unforeseeable trespasser, the only category of person not owed a duty of care.

4. Defendant's witness, Vito Martino, a supervisor in the baggage handling area for 31 years, stated in his affidavit that he had never

previously been aware of an accident in which a person's arm became caught between the belts on the conveyor, nor aware of any similar accident since Waite's. *See* Defendant's Notices of Motion for Summary Judgment, Exh. H, Affidavit of Vito Martino, Customer Service Manager for American Airlines.

5. The situation would be very different, and American would be liable, were it to be shown that American knew the machine to be dangerous and that it failed to inform AMR of the danger and/or removed a warning or a protective device provided by the manufacturer. *See Liriano v. Hobart*, 170 F.3d 264, 266 (2d Cir.1999) (affirming District Court's determination that the employer who removed manufacturer's protective device and warning from a dangerous machine was 95% liable, and the manufacturer only 5% liable, for employee's injuries resulting from the machine).

from the Port Authority. *See* Plaintiff's Motion in Opposition to Summary Judgment, *citing* § 19(a) of the lease between American and the Port Authority. Because Waite has not alleged or produced the existence of any evidence that the facility was not safe or that the conveyor belt was defective, there is no basis to conclude that American failed to maintain safe standards as contemplated under its lease with the Port Authority.

### 2. Waite Has Not Established a Breach of a Statutory Duty to Maintain a Safe Premises

 Waite asserts that American had a statutory duty to maintain a safe premises under § 200, a "safe place to work" section of New York Labor Law. *See* New York Labor Law § 200 (McKinney's 1986). This section does not apply to this dispute for two reasons. First, although the section does not state its limitations regarding particular types and places of employment, it seems to apply exclusively to construction sites and construction-related activities. The New York Court of Appeals held in *Comes v. New York State Electric and Gas Corp.* that "Section 200 of the Labor Law is a codification of the common-law duty imposed upon an owner or general contractor to provide *construction site workers* with a safe place to work." 82 N.Y.2d 876, 609 N.Y.S.2d 168, 169, 631 N.E.2d 110 (1993) (emphasis added). This Court echoed that decision in *Boyette v. Algonquin Gas Transmission,* 952 F.Supp. 192, 195 (1997), reiterating that § 200 applies to construction workers and construction sites.[6] Second, the section's provisions that state that they apply generally to public places and places of employment concern the adequacy of sanitary facilities, protection from fire and radiation hazards, the safety of vertical transportation such

as elevators, and the adequacy of exits. *See* § 200, subsec. 4. In order to prevail under a Safe Place to Work claim, plaintiff must show that a specific statute or section has been violated. *See Isola v. JWP Forest Electric Corp.,* 1999 WL 382699, at *1 (1st Dep't June 10, 1999). Waite has failed to make this showing.

### 3. Waite Has Not Established a Prima Facie Case of Common Law Negligence

 Because Waite has not demonstrated that American breached its duty to maintain a safe premises, he cannot succeed on a claim of general negligence. For a plaintiff to make out a prima facie case of negligence under New York law, s/he must show that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of that breach. *See Curley v. AMR Corp.,* 153 F.3d 5, 13 (2d Cir.1998). Because Waite has not shown that American breached any duty owed to him, *see* pp. 8–9, *supra,* he has failed to establish a prima facie case of negligence.

### 4. Waite Has Not Established Common Law Negligence in American's Hiring of AMR

 It is possible to make out a common law claim of negligence against an employer for hiring an inept independent contractor provided that the employer either failed to exercise reasonable care in the selection of the contractor or had actual or constructive knowledge of the contractor's insufficiency. *See Sanchez v. United Rental Equipment,* 246 A.D.2d 524, 667 N.Y.S.2d 410, 412 (2d Dep't 1998); *see also Lipka v. U.S.,* 369 F.2d 288, 292–93 (2d Cir.1966). Waite has offered no evi-

---

6. Despite the open-ended language of the section, the weight of authority is in favor of construing § 200 as limited to construction sites and construction-related activities. A survey of cases brought under § 200 shows that they are almost exclusively related to construction workers or accidents at con-

struction sites. There are some isolated exceptions, such as a Fourth Department case finding § 200 applicable to a worker injured by slipping down a giant slide at an amusement park. *See Noah v. IBC Acquisition Corp.,* 692 N.Y.S.2d 283, 284 (4th Dept.1999).

dence to support an allegation that American failed to use reasonable care in selecting AMR. Nor did he proffer any evidence that AMR is not qualified to train baggage handling personnel or to perform baggage handling services. Even construing the evidence in the light most favorable to the nonmovant, as required when deciding a motion for summary judgment, Waite cannot make out a plausible claim that American acted negligently in hiring AMR.

## C. American Had No Common Law Or Statutory Duty to Perform Or Control the Work

### 1. Plaintiff Does Not Assert Statutory Or Common Law Duty to Control the Work

It is possible for an employer of an independent contractor to be liable to the contractor's employees where the employer has a statutory or common law duty to control or perform the work. See *Rosenberg*, 584 N.Y.S.2d at 767, 595 N.E.2d 840, as discussed *supra*, p. 353. Plaintiff does not allege, however, that American had any such duty in this case. Absent such a showing by the plaintiff, it is not possible to find liability on this basis.

### 2. American Did Not Assume Liability to Independent Contractors' Employee Through Assumption of Control Or Supervision of Work

While no argument is presented that American had a duty to control or supervise the work of AMR employees, Waite does argue that American assumed liability through its actual assumption of control or supervision of AMR employees. Where an employer directly supervises or controls, or interferes with, the work of an independent contractor's employees, and the employee sustains an injury, the employer may be directly liable due to its direct involvement or control. See *Toscarelli v. Purdy*, 217 A.D.2d 815, 629 N.Y.S.2d 833, 836 (3rd Dep't 1995); see also *Davies v. Contel of New York Inc.*, 187 A.D.2d 898, 590 N.Y.S.2d 307, 308 (3rd Dep't 1992). Such liability is premised on the fact that, where the employer directs the employees of the independent contractor to work in ways other than those the independent contractor has knowledge of or approves, harms resulting therefrom should be compensated by the controlling or interfering employer and not the subordinate independent contractor.

Waite points to American's submission of general policy guidelines to AMR to demonstrate American's control or supervision of AMR. However, an employer's providing its contractor with guidelines is not equivalent to the employer exerting supervision or control over the performance of the contractor's work or its employees. See *Toscarelli*, 629 N.Y.S.2d at 836. As Waite has introduced no other evidence that American supervised, controlled, or interfered with his work, or the work methods of AMR, in any way relating to his injury, recovery under this theory is inappropriate.

## D. American Has No Liability Under Respondeat Superior (Theory of Vicarious Liability for Inherently Dangerous Conditions)

### 1. The Law is Inapposite

Plaintiff relies on the fact of his injury to support his argument that the work he undertook was inherently dangerous (or, in the alternative, that the conveyer was defective), subjecting American to vicarious liability for the negligent acts of the independent contractor. Plaintiff's argument fails as a matter of law.

An employer of an independent contractor may be liable for the negligence of the contractor where the work for which the employer secured the independent contractor was "inherently dangerous." See *Rosenberg*, 584 N.Y.S.2d at 767–68, 595 N.E.2d 840. However, precedent establishing vicarious liability of the employer for the negligent acts of the independent contractor is based upon fact situations where the injured party is a member of the public, not an employee of the independent contractor. The employer of the in-

dependent contractor has vicarious liability under respondeat superior to members of the public injured by the negligent acts of the contractor in the service of the employer; the employer has no duty to the contractor's employees. For example, where an independent contractor performing construction on a building site caused harm to a pedestrian through negligently constructing its scaffolding such that its employee fell from the scaffolding onto a passer-by, injuring her, the owner of the building site who had employed the independent contractor was liable to the pedestrian. The employer was not, however, liable to the fallen employee for his injuries; he had recovery under workers' compensation from his direct employer, the independent contractor. *See Rohlfs v. Weil,* 271 N.Y. 444, 3 N.E.2d 588 (1936); *see also State v. Schenectady Chemicals,* 103 A.D.2d 33, 479 N.Y.S.2d 1010, 1014 (3rd Dep't 1984); *Eastern Airlines v. Joseph Guida & Sons Trucking Co. et al.,* 675 F.Supp. 1391, 1391 (E.D.N.Y.1987).

This principle of making the employer vicariously liable for the negligence of the independent contractor is merely an extension of strict liability for inherently dangerous activities; the employer has a non-delegable duty to ensure that the public is not harmed. Such a reading is supported by the fact that whether or not the vicarious liability is imposed on the employer of the independent contractor is determined by whether such liability serves public policy; where it does not serve any public policy, such vicarious liability should not be imposed. *See Rosenberg,* 584 N.Y.S.2d at 769, 595 N.E.2d 840. Plaintiff's argument fails because he is not a member of the public as contemplated under the cases establishing vicarious liability of employers for contractors.

### 2. Condition Or Activity Was Not Inherently Dangerous

Even were the principle of an employer's vicarious liability under this line of cases to be extended to include harms to the employees of the independent contractor, Waite's claim would still fail because the activity in which he was engaged was not inherently dangerous. The fact that a thing or activity causes frequent or severe injury is not sufficient to make it abnormally or inherently dangerous under law: there must be a union of the harmfulness of the thing or activity with it being "unnatural" or "inappropriate" to its context.[7] *See Prosser and Keaton,* § 78, pp. 549–50. The presence of a baggage conveyer in an airport baggage handling area clearly fails the inappropriateness or unnaturalness requirement; it also does not rise to the level of danger of an activity normally adjudged inherently or abnormally dangerous.[8] Without doubt, Waite sustained a serious and life-affecting injury. Yet, the fact that the activity proved dangerous to Waite does not make it inherently dangerous.

### VI. Conclusion

For the reasons above, American's motion for summary judgment pursuant to Rule 56 is granted. As this disposes of all issues, the Clerk is directed to close this case.

---

7. For example, automobiles cause tens of thousands of on-road deaths per year but are not considered inherently dangerous under law because they are not abnormal or unnatural in the context of a highway. *See Prosser and Keaton,* § 78, pp. 549–50.

8. Abnormally or inherently dangerous things and activities typically include: blasting, pile driving, certain types of excavations, fumigation of buildings with dangerous gasses such as cyanide, the emission of noxious gasses into densely populated areas, and the collection of large quantities of explosives or inflammable liquids in a populous area. *See Prosser and Keaton,* § 78, pp. 549–50.