Coluccio v Independence Care Sys., Inc. (2024 NY Slip Op 51217(U))

[*1]

Coluccio v Independence Care Sys., Inc.

2024 NY Slip Op 51217(U)

Decided on September 5, 2024

Supreme Court, Kings County

Mallafre Melendez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 5, 2024
Supreme Court, Kings County

Maria Coluccio, as Administratrix of the 
 Estate of ELVIRA COLUCCIO, Plaintiff,

against
Independence Care System, Inc., CENTERLIGHT CERTIFIED HOME HEALTH AGENCY, 
 DOCTORS ON CALL and NEW YORK PRESBYTERIAN BROOKLYN METHODIST HOSPITAL d/b/a NEW YORK METHODIST HOSPITAL, Defendants.

Index No. 528288/2019

Plaintiff
Elliot B. Sinel, Esq. (sinelecf@sinellaw.com)
Sinel & Olesen, PLLC
7 Penn Plaza, 8th Floor
New York, NY 10001
212-465-1000
Defendant Independence Care System, Inc.
Anthony Matthew Chionchio, Esq. (anthony.chionchio@mcblaw.com)
Martin Clearwater & Bell LLP
90 Merrick Avenue, Suite 401
East Meadow, NY 11554
516-479-3679
Defendant CenterLight Certified Home Health Agency
Ian Miles Nerlfi, Esq. (inerlfi@vlhd-law.com)
Vaslas Lepowsky & Hauss LLP
201 Edward Curry Ave, Ste 100
Staten Island, NY 10314
718-761-9300
Defendant Doctors On Call
Eric J. Koplowitz, Esq. (ekoplowitz@hkmpp.com)
Hardin Kundla Mckeon & Poletto, P.A.
110 William Street, 24th Floor
New York, NY 10038
212-571-0111
Defendant New York Presbyterian Brooklyn Methodist Hospital d/b/a New York Methodist Hospital
Brian John DiPentima, Esq. (b.dipentima@bpn.law)
Barker Patterson Nichols, LLP
300 Garden City Plaza, Suite 308
Garden City, NY 11530
516-282-3355

Consuelo Mallafre Melendez, J.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:
NYSCEF #s: Seq. 2: 65 — 67, 68 — 87, 142 — 143, 144, 148
Seq. 3: 88 — 89, 90 — 102, 134 — 135, 136 — 138, 150
Seq. 4: 103 — 105, 106 — 127, 139 — 140, 141, 149
Defendant New York-Presbyterian Brooklyn Methodist Hospital s/h/a New-York Presbyterian Brooklyn Methodist Hospital d/b/a New York Methodist Hospital ("Methodist Hospital") moves (Seq. No. 2) for an order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing all claims against Methodist Hospital.
Defendant CenterLight Certified Home Health Agency ("CenterLight") separately moves (Seq. No. 3) for an order, pursuant to CPLR 2004, permitting an extension of time to move for summary judgment and, pursuant to CPLR 3212, granting summary judgment in favor of CenterLight and dismissing all claims and cross claims against them.
Defendant Independence Care System, Inc. ("Independence Care") separately moves (Seq. No. 4) for an order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing the complaint against Independence Care on the basis that it is a health insurer and not liable for any direct care provided to Decedent. Plaintiff opposes all three motions with respect to all Defendants.
Maria Coluccio originally commenced this action as Attorney-in-Fact for Elvira Coluccio ("Decedent") on December 31, 2019, asserting claims of medical malpractice and negligence against Independence Care, CenterLight, Methodist Hospital, and non-moving co-defendant Doctors On Call, in connection with the prevention and treatment of pressure ulcers. Decedent passed away after the action was commenced, and Plaintiff Maria Coluccio was substituted as administratrix of Decedent's estate by so-ordered stipulation on April 14, 2022, having been duly issued letters of administration by Surrogate's Court.
As an initial matter, the Part Rules of this Court provide that summary judgment motions must be filed within 60 days of the Note of Issue, except by stipulation or with leave of the Court upon good cause shown pursuant to Brill v City of New York (2 NY3d 648 [2004]). The Note of Issue in this action was filed on March 8, 2024. The motion of Methodist Hospital was timely filed on May 6, 2024, but the motions of CenterLight (May 10, 2024) and Independence Care (May 15, 2024) were approximately three days and one week late, respectively.
In support of their motion, counsel for CenterLight affirms that the brief delay in filing [*2]their motion was due to the handling attorney dealing with an illness. Given the lack of prejudice, the short length of the delay, the efficiency of deciding these motions for summary judgment concurrently, and the movant providing a "satisfactory explanation for the untimeliness" under Brill, this Court finds there is sufficient reason to reach the merits of CenterLight's motion.
Independence Care also offers an explanation to extend the summary judgment deadline, setting forth in their attorney affirmation that the preparation of the summary judgment motion was delayed by a handling attorney leaving the law firm and by obtaining the affidavit from Megan Rogers, an employee of Independence Care. The Court finds they have shown good cause under Brill to permit the relatively short delay.
There is no opposition from any party that these motions were untimely filed, and the return date for all three motions was subsequently adjourned by stipulation of all parties. Accordingly, the Court grants an extension of time to both CenterLight and Independence Care to consider their motions filed after the 60-day deadline.
At the time of the events at issue, Decedent was an 87-year-old woman with medical history including dementia, hypertension, diabetes, hyperlipidemia, GERD, osteoarthritis, and glaucoma. From approximately August 2016 through March 2019, she was enrolled as a member of Independence Care, a health insurer/health maintenance organization (HMO) under Public Health Law article 44.
Decedent was admitted to Methodist Hospital on July 3, 2017, where she was treated for sepsis secondary to a urinary tract infection. She was recorded on admission to have multiple pressure ulcers, including stage II pressure ulcers on her left buttock, right buttock, and left hip, an unstageable pressure ulcer on the right heel, a deep tissue injury on her coccyx measuring 4 x 4 x 0.1 cm, and a stage I pressure ulcer on her left ear measuring 1 x 1 cm. She was discharged home on July 7, 2017.
Decedent began receiving skilled nursing and physical therapist visits from CenterLight, a home health care provider, on July 9, 2017. These nursing visits occurred multiple times per week from July 9 through September 11. Decedent's existing pressure ulcers were documented during her first visit from registered nurse Shivani Kumar, who advised Decedent's daughter, her primary caregiver, on turning/repositioning and wound care. On subsequent visits, CenterLight nurses documented new and worsened pressure ulcers on her bilateral heels, left hip, and buttocks, and implemented wound care treatment ordered by her primary care physician, including topical ointments and dressings.
Decedent was admitted again to Methodist Hospital on September 11, 2017, where she was diagnosed with sepsis secondary to an unstageable sacral pressure ulcer, now measuring 20 x 10 cm on admission or 18 x 10 x 2 cm in a nursing assessment. She was also recorded to have a stage II right thigh ulcer measuring 4 x 1 cm and bilateral unstageable shin pressure ulcers measuring 3 x 5 cm. She underwent surgical debridement of the sacral pressure ulcer on September 13 and September 18. A possible coccyx fracture was also noted from Decedent's CT scan on September 22, "suggestive of a fracture of the first sacral segment," but the age of the fracture was not known. Decedent was discharged home on September 25.
Following her discharge from Methodist Hospital, CenterLight resumed visiting nurse services from September 26 through October 10, 2017. CenterLight's visiting nurses implemented a care plan for wound treatment signed and directed by Decedent's primary care physician, non-party Franco Stefano, M.D. ("Dr. Stefano").
Plaintiff alleges that Methodist Hospital and CenterLight, through their agents and employees, departed from the standard of care in treatment and prevention of pressure ulcers, and alleges that those departures were a proximate cause of the development and deterioration of Decedent's pressure ulcers.
Plaintiff also alleges medical malpractice and negligence against Independence Care, the HMO that coordinated her Medicaid health insurance coverage. Plaintiff alleges that Independence Care failed to provide appropriate home health care services and also alleges vicarious liability against Independence Care for acts and omissions of home health aides in their network, specifically the non-parties HCS Certified Home Care d/b/a Girling Health Care of NY ("Girling") and Parent Care Home Care, LLC ("Parent Care").
First, in support of Independence Care's motion (Seq. No. 4), the movant submits an affidavit from Megan Rogers ("Rogers"), an employee of Independence Care, as well as copies of the pleadings and relevant contracts.
Rogers avers that Independence Care is a not-for-profit corporation which operated as an HMO and provided to Decedent a Managed Long Term Care (MLTC) Plan, as defined in Public Health Law § 4403-f. The corporation itself was not a licensed home care services provider under Public Health Law article 36. Their function was essentially to "coordinate the member's Medicaid benefits, determining the level and amount of community-based services the member is entitled under Medicaid and contracting and paying the providers of such services." She avers that the authorization of home care services is "highly regulated," and approval of "personal care services for 24 hours on a split-shift basis" is only covered when such care is deemed medically necessary and the person's needs cannot be otherwise met. During the time she was enrolled in Independence Care's MLTC Plan, Decedent was assessed twice a year by a case manager/social worker and approved for 24-hour home care. Independence Care's records indicate that her skilled nursing and personal care services were provided directly by co-defendant CenterLight and non-parties Girling and Parent Care.
Rogers further avers that the New York State Department of Health was the ultimate authority over "the level and amount of Medicaid covered services required [and] whether the Plan has met its burden." Under the applicable law in 2017, the exclusive remedy to challenge the MLTC's determination of coverage/benefits was a hearing with the Department of Health and an Article 78 proceeding.
Based on Rogers's affidavit and supporting exhibits, Independence Care had an independent-contractor relationship with Girling and Parent Care, two licensed home care services providers utilized by Decedent. Rogers avers that Independence Care "did not have the right or the ability to control the manner in which [Girling or Parent Care] provided home care services or medical services, did not have the ability to hire or fire any personal care aide, home attendant, physician or nurse, and did not have the right or ability to direct the clinical care [they] provided." Rogers also avers that Independence Care had no relationship to co-defendants CenterLight or Doctors On Call and never coordinated their care of Decedent.
Based on the submissions, Independence Care has established prima facie entitlement to summary judgment. Broadly, a party is not vicariously liable for the alleged medical malpractice or negligence of independent contractors, over whom they had "no right to control the manner in which the work is to be done" (Bennet v State Farm Fire and Casualty Company, 198 AD3d 857 [2d Dept 2021]). The First Department has applied this longstanding principle to an HMO, which exercised no "supervisory control" over a medical transport service in the plaintiff's care [*3]plan (Coker v Perez, 211 AD3d 507 [1st Dept 2022]). Independence Care has demonstrated prima facie, through contracts and Rogers's affidavit, that any home health aides or nurses providing direct care to Decedent were not "subject to substantial control" from Independence Care (Bennet, 198 AD3d 857, quoting O'Brien v Spitzer, 7 NY3d 239 [2006]) and Independence Care was not the entity responsible for hiring, firing, or supervising such providers. Furthermore, the recognized exceptions to the independent contractor rule — a statutory duty to control the work, a contractual assumption of duty, or performance of an "inherently dangerous" activity — are not applicable here (see Rosenberg v Equitable Life Assur. Soc. of US, 79 NY2d 663 [1992]).
Additionally, to the extent that Plaintiff alleges that Independence Care's employed case workers were negligent in their assessment of Decedent's needs or authorization of 24-hour "split-shift" care, Plaintiff and Decedent did not seek the appropriate remedy of a fair hearing with the Department of Health. Outside of an Article 78 proceeding following such hearing, this Court does not have the jurisdiction to review determination on Medicaid benefits/coverage.
Furthermore, in opposition, Plaintiff fails to raise any triable issue of fact to defeat Independence Care's motion. The affirmations from Plaintiff's counsel and a redacted medical expert (whose unsigned affirmation has no probative value pursuant to CPLR 2106) merely state in a conclusory manner that Independence Care provided wound care and nursing services to Decedent. They provide no citations to fact or any evidence to counter the movant's prima facie case that Independence Care and its employees provided no direct care to Decedent and had no supervisory control over its independent contractors, Girling and Parent Care. For these reasons, Independence Care's motion for summary judgment is granted in its entirety.
Turning to the other substantive summary judgment motions, "[i]n determining a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party" (Stukas v Streiter, 83 AD3d 18, 22 [2d Dept 2011]). In evaluating a summary judgment motion in a medical malpractice case, the Court applies the burden shifting process as summarized by the Second Department:
"The elements of a medical malpractice cause of action are a deviation or departure from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries. When moving for summary judgment, a defendant provider has the burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby. In order to sustain this burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's bill of particulars. In opposition, the plaintiff must demonstrate the existence of a triable issue of fact as to the elements on which the defendant has met his or her initial burden. General allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat a defendant's summary judgment motion. Although summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions, expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact" (Barnaman v Bishop Hucles Episcopal Nursing Home, 213 AD3d 896, 898-899 [2d Dept 2023] [internal quotation marks and citations omitted].
In support of Methodist Hospital's motion for summary judgment (Seq. No. 2), the movant submits an expert affirmation from Bruce Farber, M.D. ("Dr. Farber"), a licensed [*4]physician certified in internal medicine and infectious disease.
Based on the record and his expertise, Dr. Farber opines that there were no departures from the standard of care by Methodist Hospital's physicians, nurses, and staff during Decedent's admission from July 3 through July 7, 2017 admission, or her admission from September 11 through September 25, 2017.
Dr. Farber notes that upon Decedent's admission in July, she already had multiple pressure ulcers on her left and right buttocks, left hip, bilateral heels, and left ear. He opines that her wounds were treated appropriately with topical hydrogel, Alevyn foam dressing, and turning and positioning every two hours. Upon her discharge on July 7, after her urinary tract infection and sepsis had resolved, the records of Methodist Hospital and CenterLight reflect that all her pressure ulcers were the same stage and approximate size as they were on July 3. She was discharged home "with reinstatement of prior home care services" with instructions to her caregiver to continue skin inspection, turning and positioning, and off-loading pressure. In the expert's opinion, her wounds were "properly assessed, measured, and monitored" during this admission and all treatment she received was in accordance with the standard of care. He opines the wounds at that time did not warrant more aggressive debridement or other treatment.
Dr. Farber notes that during Decedent's second admission to Methodist Hospital on September 11, she again was admitted with multiple preexisting pressure ulcers, some unstageable. At that time her sacral ulcer was significantly larger with "foul-smelling drainage," and she was treated for sepsis likely secondary to the infected ulcer. Dr. Farber opines that she was appropriately treated with antibiotics and fluids and received timely infectious disease and wound care consults within 24 hours. He opines that pressure ulcer treatment protocols were implemented within the standard of care, including cleaning with hydrogel, gauze, turning and positioning every two hours. Dr. Farber opines that the increased presence of granulation tissue in her sacral ulcer showed "signs that the wounds were improving." Surgical debridement was performed on the sacral ulcer on September 13 and September 18. On September 25, she was deemed stable for discharge, afebrile, and the sacral ulcer no longer appeared infected. Dr. Farber notes that although the sacral ulcer was still unstageable, it was smaller than it was on admission. He opines that she was "properly set up with outpatient care including home health care and proper wound care instructions" on discharge.
On the issue of proximate causation, Dr. Farber opines that no acts or omissions at Methodist Hospital led to development or deterioration of her pressure ulcers during the July 2017 admission, as evidenced by the fact her wounds "did not worsen, despite her myriad of comorbidities." He opines similarly that despite her comorbidities, infected sacral ulcer, and other pressure ulcers when she entered the hospital in September 2017, "her wounds improved or remained stable" as a result of the treatment she received.
Based on the submissions and expert opinion, Methodist Hospital has established prima facie entitlement to summary judgment, shifting the burden to Plaintiff to raise a triable issue of fact.
In opposition, Plaintiff submits a redacted expert affirmation which purports to be from a licensed physician, (name of expert redacted), certified in internal medicine and geriatric medicine.
Plaintiff's expert opines that staff at Methodist Hospital departed from the standard of care by failing to document the stage and size of her pressure ulcers in her chart properly and consistently, noting that the dimensions of the wounds were not updated in her "integumentary [*5]assessments," which the expert opines are incomplete or inconsistent with her wound care consultations. Plaintiff's expert also opines that Methodist Hospital failed to turn and reposition Decedent every two hours, as required by the standard of care, because the "medical records failed to record a complete and detailed turning and positioning chart." Additionally, the expert opines that even if Decedent had been turned every two hours, as directed in her chart, the standard of care required turning "at least every two hours and more frequently if . . . the two-hour turning schedule has failed."
On the issue of proximate causation, Plaintiff's expert opines without detail that the Decedent's "skin breakdown and/or deterioration" was not unavoidable, as it could have been prevented by pressure ulcer prevention and treatment.
At the outset, the Court notes that pursuant to Richter v Menocal, 216 AD3d 823 [2d Dept 2023], Plaintiff has not complied with the requirement to present the Court with a signed, unredacted copy of the expert affirmation for in camera inspection. To this date, the Court has not received an unredacted version with the physician's signature, as required to be deemed "subscribed and affirmed" under CPLR 2106, and this defect was not cured after it was acknowledged at oral argument. Plaintiff also did not provide an explanation for the redaction in their moving papers or at oral argument.
Even if presented with a valid unredacted affirmation, the Plaintiff's submissions are insufficient to defeat Methodist Hospital's motion for summary judgment. "Although conflicting expert opinions may raise credibility issues which can only be resolved by a jury, expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise a triable issue of fact (Wagner v. Parker, 172 AD3d 954, 966 [2d Dept. 2019] [internal citations omitted]). Here, Plaintiff's expert offers only conclusory and unsupported opinions as to the alleged departures from the standard of care by Methodist Hospital. For example, the expert states that the patient was "noted as being turned and positioned on September 14, 2017 at 12:28 a.m. and not again until 11:26 p.m.," drawing the conclusion that the patient was only turned twice on that day. However, those progress notes only indicate a standing order for "Maximum Assistance, Turn & Position," and her chart elsewhere indicates a protocol to be repositioned every two hours, which Plaintiff's expert acknowledges is the standard of care. The fact each turn was not documented does not equate to a failure to implement a turning and positioning schedule. The expert also suggests Decedent should have been turned more than every two hours, if the two-hour schedule "failed," but the expert does not provide any detail or basis for suggesting the two-hour turning schedule had "failed" during the July or September admission.
The expert's opinions on proximate causation are also controverted by the record. Notably, the expert does not counter Dr. Farber's opinion that Decedent did not develop any new pressure ulcers during her July 3 — July 7 admission, did not develop any new pressure ulcers during her September 11 — September 25 admission, and all her existing pressure ulcers remained the same stage/size or improved during the time she was treated by the hospital. The expert also does not counter Dr. Farber's opinion that she was stable for discharge with home care instructions at the end of both admissions. The expert's statement that her "skin breakdown and/or deterioration" was proximately caused by Methodist Hospital is therefore unsupported by any evidence of said breakdown or deterioration.
As Plaintiff's purported expert affirmation is redacted and lacks a signature, it is in inadmissible form and has no probative value in a summary judgment motion (see CPLR 2106; Richter, at 824; Burgos v Vargas, 33 AD3d 579 [2d Dept 2006]). Even if considered, the expert's [*6]opinions are conclusory, speculative, and not supported by the record, and they fail to raise a triable issue of fact as to any departures from the standard of care or proximate causation. Accordingly, the motion for summary judgment is granted as to Methodist Hospital.
Finally, in support of CenterLight's summary judgment motion (Seq. No. 4), the movants submit an expert affidavit from Anne Walsh, R.N. ("RN Walsh"), a registered nurse certified in wound, ostomy, and continence nursing who avers she has experience in prevention and treatment of pressure ulcers in geriatric patients.
RN Walsh opines that the nursing care provided by CenterLight's visiting nurse employees was in accordance with the standard of care. Visiting nurses and physical therapists from CenterLight provided assessments and treatment of Decedent at her home beginning on July 9, 2017 through September 11, 2017. RN Walsh notes that the wound care provided to Decedent was "performed pursuant to orders provided by the physicians at Methodist Hospital in collaboration with her primary care physician," Dr. Stefano. Decedent lived with her daughter and also had a home health aide, and RN Walsh notes that there is documentation of the visiting nurses giving instructions on daily wound treatment and pressure-relieving measures. RN Walsh notes that Decedent's daughter and home health aides were responsible for her "day-to-day treatment" such as turning and repositioning.
Based on the records from each nursing visit, RN Walsh opines in detail that all nurses and nurse practitioners from CenterLight acted in accordance with the standard of care. She notes that Decedent's newly emerged pressure ulcers or their deterioration was noted at each visit and reported to physicians, who provided all orders related to wound care treatment, e.g., prescribing different topical ointments and foam or dry dressings. RN Walsh opines that the initial visiting nurse appropriately gave instructions and guidance to Decedent's daughter on "signs and symptoms of pressure ulcers, turning schedule if restricted to bed, limiting chair sitting to 2 hours at any given time . . . and giving instructions on wound care and dressing changes." Ultimately, a visiting CenterLight nurse on September 11 recommended Decedent be transferred to Methodist Hospital.
RN Walsh further opines that the treatment provided on CenterLight's home visits after her September 25 discharge was in accordance with the standard of care, and no new pressure ulcers formed or worsened in that period.
Based on the submissions, CenterLight has established prima facie entitlement to summary judgment. Of note, a registered nurse is qualified to opine as to the standard of care within her expertise as a nurse, though not on treatment decisions made by a physician (see Zak v Brookhaven Mem. Hosp. Med. Ctr., 54 AD3d 852, 853 [2d Dept 2008]), and the Court finds the expert affidavit has established her qualifications with respect to nursing care. The expert affidavit of RN Walsh demonstrates that there were no departures from the standard of care on the part of CenterLight's employees or agents, and they appropriately implemented or provided instructions to Decedent's caregivers on pressure ulcer prevention and treatment measures. Furthermore, the submissions establish that the care provided to Decedent by CenterLight's nurses and nurse practitioners was limited and under the direction of her primary care provider, and that CenterLight did not provide, nor were responsible for, day-to-day care.
In opposition to CenterLight's motion, Plaintiff submits an affirmation from a licensed physician whose name and signature are redacted.
Plaintiff's expert opines that CenterLight failed to "consistently measure and stage the decedent's pressure wounds." The expert also opines they did not "accurately document [*7]instructions purportedly given" to the daughter and home health aides on turning and positioning.
As previously discussed, Plaintiff has not provided the Court with unredacted affirmations for in camera inspection in compliance with Richter (216 AD3d 823), and the unsigned affirmation is without probative value. Notwithstanding, Plaintiff's purported expert fails to raise any issues of fact sufficient to defeat CenterLight's summary judgment motion. Contrary to their statements, the CenterLight records show repeated evaluations and documentation of Decedent's pressure ulcers, as well as documenting that the visiting nurses provided instructions to the patient's caregiver on daily wound treatment and pressure ulcer prevention. As such, even if the Court considered the redacted expert's opinions, they are conclusory, speculative, and unsupported by the record, and CenterLight's motion for summary judgment is therefore granted.
Accordingly, it is hereby:
ORDERED that Methodist Hospital's motion (Seq. No. 2) for an order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing all claims against them, is GRANTED; and it is further
ORDERED that CenterLight's motion (Seq. No. 3), pursuant to CPLR 3212, granting summary judgment in favor of CenterLight and dismissing all claims and cross claims against them, is GRANTED; and it is further
ORDERED that Independence Care's motion (Seq. No. 4) for an order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing the complaint against Independence Care is GRANTED.
The Clerk shall enter judgment in favor of INDEPENDENCE CARE SYSTEM, INC., CENTERLIGHT CERTIFIED HOME HEALTH AGENCY, and NEW-YORK PRESBYTERIAN BROOKLYN METHODIST HOSPITAL d/b/a NEW YORK METHODIST HOSPITAL.
This constitutes the decision and order of this Court.
ENTER
Hon. Consuelo Mallafre Melendez
J.S.C.