OPINION OF THE COURT
Philip G. Minardo, J.
Defendant, Mary Ellen Romano, M.D. (hereinafter Dr. Romano), moves for an order granting her summary judgment dismissing all claims, cross claims, and counterclaims against her. Defendant Seaview Radiology, P. C. (hereinafter Seaview) cross-moves for an order granting it summary judgment dismissing the complaint and any cross claims. Plaintiff opposes both motions in all respects.
Findings of Fact
This is a medical malpractice and wrongful death action for failure to timely diagnose and treat cancer in plaintiff’s, decedent Nellie Guadagnoli, left breast. Her first visit to Dr. Romano was on February 12, 1991 at which time she complained of the effects of early menopause and pain in her stomach. Dr. Romano took a history, which was negative for any indications of cancer, and then proceeded to perform a clinical *963 examination of the plaintiff which was negative. Dr. Romano referred the plaintiff to defendant Seaview in order to have a routine mammogram performed. A mammogram was taken on March 1, 1991 at Seaview and reviewed by defendant Dr. Fox who then compared the March 1, 1991 study to a March 17, 1989 mammogram and noted that there was no change. Specifically, Dr. Fox found that the plaintiff had dense breast tissue with superimposed fibrocystic changes. Nevertheless, he found no mammographic evidence of malignancy.
On February 26, 1992, plaintiff returned to Dr. Romano with complaints of problems in her left breast. Dr. Romano noted that the plaintiff’s left breast was swollen, hard, and distorted. Once again she referred plaintiff to defendant Seaview for them to perform both a mammogram and a sonogram. She also made an appointment for the plaintiff to see a breast specialist and further advised her that she may need an endometrial biopsy. On February 27, 1992, the plaintiff underwent a mammogram at Seaview which was again interpreted by Dr. Fox. Upon reviewing the films and examining the plaintiff’s breasts, he asked that an additional spot film be done. He compared the several film studies and informed Dr. Romano that the mammogram study of February 27, 1992 revealed a marked change from previous films and showed a possibility of inflammatory carcinoma.
It is plaintiff’s contention that Dr. Fox failed to diagnose on the March 1, 1991 mammogram the possible existence of a malignancy in the left breast. Furthermore, Dr. Romano failed to detect any abnormality that would warrant further investigation in plaintiff’s left breast during her clinical examination on February 12,1991. Thus, the plaintiff concludes that as a result of defendants’ failure to diagnose breast cancer in February 1991, the cancer was left untreated and allowed to metastasize causing her untimely death on August 22, 1993.
Supporting the plaintiff’s contentions is the report of an expert radiologist who, upon reviewing the March 1, 1991 mammogram, found that a mass in the left breast was detectable. Plaintiff goes on to allege that if Dr. Romano had thoroughly examined plaintiff’s breast on February 12, 1991, the examination should have indicated an abnormality warranting a referral to a breast surgeon for evaluation.
With regard to defendant Seaview’s cross motion for summary judgment, the factual scenario is as follows: After performing a clinical examination on the plaintiff on February 12, 1991 and February 6, 1992, Dr. Romano referred her to *964 Seaview Radiology, P. C., in order for Seaview to perform a mammogram of the plaintiffs left breast. Defendant Seaview is an independent medical corporation whose practice is to perform radiological diagnostic tests including mammograms and interpret the results of these tests in order to render a report of their findings to referring physicians. It is undisputed that defendant Dr. Fox performed services for Seaview as an independent contractor. Though the mammogram itself was performed by a technician during plaintiffs visits in 1991 and 1992, Dr. Fox was actually present as the technician was conducting the test during the 1992 visit. In fact, Dr. Fox palpated plaintiffs left breast in order to determine what area should be given particular attention when the spot film was obtained. Clearly the plaintiff did not know that Dr. Fox was an independent contractor. As far as she was concerned defendant Seaview was to perform the needed services since the appointment was made with Seaview and not Dr. Fox.
Conclusions of Law
In order to obtain summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. (CPLR 3212; Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957].) Issue finding, as opposed to issue determination, is the key to summary judgment and the papers are carefully scrutinized in the light most favorable to the party opposing the motion. (Supra.) Once a moving party has made a prima facie showing of its entitlement to summary judgment, “the burden shifts to the opposing party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action.” (Garnham & Han Real Estate Brokers v Oppenheimer, 148 AD2d 493, 494 [2d Dept 1989]; see also, Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; Friedman v Pesach, 160 AD2d 460 [1st Dept 1990].) Mere conclusory statements, expressions of hope, or unsubstantiated allegations are insufficient to defeat the motion. (Frank Corp. v Federal Ins. Co., 70 NY2d 966 [1988].) In upholding an order granting defendant summary judgment the Appellate Division stated the opinions expressed by plaintiffs experts as to causation and as to performance were stated in wholly conclusory terms and thus were without evidentiary value. (McHaffie v Antieri, 190 AD2d 780 [2d Dept 1993]; see also, Attanasio v Lashley, 223 AD2d 614 [2d Dept 1996].)
*965 The court notes that the plaintiff failed to proffer an affirmation from a gynecologist in support of his position. Without such an affirmation the plaintiff is unable to state what the standard of care is regarding a gynecologist’s treatment of her patients in situations such as this, and specifically how she deviated from said standard of care. This court can give little credence to the plaintiff’s expert radiologist who alleges in a conclusory fashion that Dr. Romano should have made positive findings in her clinical examination of February 12, 1991. It is undisputed that plaintiff’s expert radiologist never examined plaintiff, nor does plaintiff’s expert radiologist proffer his past experience palpating patients’ breasts or conducting other clinical examinations which might detect the presence of malignancies. The plaintiff’s oncology expert does not shed any light as to any deviation from good and accepted standards of medical practice by any of the defendants.
Accordingly, this court finds the plaintiff’s expert radiologist’s conclusions alleging that Dr. Romano failed to exercise reasonable care in her clinical examination of plaintiff on February 12, 1991 to be wholly unsubstantiated, conclusory, and without merit. There being no other credible medical proof of Dr. Romano’s alleged negligence, Dr. Romano’s motion for summary judgment dismissing the complaint is granted.
The general rule is that an employer who hires an independent contractor is not liable for the independent contractor’s negligent acts. (See, Rosenberg v Equitable Life Assur. Socy., 79 NY2d 663, 668, citing Whitaker v Norman, 75 NY2d 779.) However, there are exceptions to this rule where the employer is liable for the independent contractor’s negligence. The exceptions include situations where the employer (1) is under a statutory duty to perform or control the work, (2) has assumed a specific duty by contract, (3) is under a duty to keep premises safe, and (4) has assigned work to the independent contractor which the employer knows or has reason to know involves special dangers inherent in the work or dangers which should have been anticipated by the employer (see, May v 11½ E. 49th St. Co., 269 App Div 180, 182, affd 296 NY 599). Additionally, there is a fifth exception where a hospital is held vicariously liable for the emergency room doctors who are independent contractors, where the hospital holds itself out to the public as an institution furnishing doctors, staff, and facilities for emergency treatment (see, Ryan v New York City Health & Hosps. Corp., 220 AD2d 734 [2d Dept 1995]; Mduba v Benedictine Hosp., 52 AD2d 450 [3d Dept 1976]). In these cases, *966 “the employer cannot insulate itself from liability by claiming that it was not negligent: the employer is vicariously liable for the fault of the independent contractor because a legal duty is imposed on it which cannot be delegated.” (Rosenberg v Equitable Life Assur. Socy., supra, at 668.)
In the case at bar, we are concerned with the fifth exception involving the use of medical doctors in health care facilities. In Mduba v Benedictine Hosp. (supra at 452), the doctor conducted his examinations in the emergency room in accordance with the rules and regulations of the hospital. The doctor’s job was to direct and supervise the emergency room and was thus controlled by the hospital as to the means or manner of achieving this result.
Although generally a hospital may not be held liable for the malpractice of a physician who is not an employee of the hospital (see, Sledziewski v Cioffi, 137 AD2d 186, 188-189), a hospital may be held vicariously liable for the acts of independent physicians where the patient “enters the hospital through the emergency room and seeks treatment from the hospital, not from a particular physician.” (Ryan v New York City Health & Hosps. Corp., supra, at 736, citing Mduba v Benedictine Hosp., supra at 453.) Employment contracts unknown to a patient admitted to a hospital through the emergency room do not affect the principle of vicarious liability. (Supra.) A “situation may present a question of fact whether the patient could have reasonably believed that the treating physician was provided by the hospital or otherwise acting on the hospital’s behalf.” (Noble v Porter, 188 AD2d 1066, 1066-1067 [4th Dept 1992].) “The principle of ostensible agency or agency by estoppel has been applied in this State to hold a hospital or other medical facility responsible for the malpractice of a physician providing services there, despite the physician’s status as an independent contractor, where medical care was sought by a patient from the hospital or clinic rather than from a particular physician.” (Soltis v State of New York, 172 AD2d 919, 919-920 [3d Dept 1991].)
Referring to the case at bar, if Seaview controlled the manner in which Dr. Fox operated the radiology center then under Mduba (supra) he was an employee of the facility. However, if Dr. Fox is truly an independent contractor and not an employee of the facility, Seaview was still responsible under the theory of agency. Ms. Nellie Guadagnoli, the decedent, believed she was being treated by Seaview not particularly by Dr. Fox. Ms. Guadagnoli’s doctor sent her to Seaview and not to Dr. Fox *967 so therefore any reasonable person in Ms. Guadagnoli’s position would believe that Dr. Fox was employed by Seaview. As in Soltis (supra) and Mduba, the principle of ostensible agency must be applied in this case. This court finds the plaintiff is not bound by the private limitations contained in a contract between the radiological facility and the particular radiologist. Defendant Seaview held itself out to the public offering and rendering radiological services and therefore Seaview should be estopped from claiming no responsibility on the part of their independent contractor.
Accordingly, defendant Seaview’s motion for summary judgment is denied as this court finds there to be issues of fact concerning whether a reasonable person would consider Dr. Fox a de facto or apparent employee of Seaview under the principle of ostensible agency or agency by estoppel.